Mark C. CANTU, Appellant,

v.

Juan Lopez BUTRON, Individually, et al., Appellees.

No. 13–93–505–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 29, 1996.

Rehearing Overruled April 18, 1996.

Carlos Villarreal, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellant.

Robert W. Johnson, Jr., Corpus Christi, T.B. Nicholas, Jr., Dallas, for appellees.

Before SEERDEN C.J., and DORSEY and RODRIGUEZ, JJ.

## OPINION

SEERDEN, Chief Judge.

Appellees Juan Lopez Butron and Luis Enrique Cortinas Villarreal, each individually and as representative of his family, sued appellant Mark Cantu, an attorney. This suit involved Cantu's conduct in obtaining contracts to represent Lopez and Cortinas in litigation that resulted from the 1988 collapse of the Amigo Store in Brownsville. The case was tried to the court. Lopez and Cortinas's petition asserted facts that might support several causes of action, but the judgment addresses only claims for fraud and breach of fiduciary duty.

Cantu questions the trial court's jurisdiction, challenges the legal and factual sufficiency of the evidence, and complains of the trial court's findings of fact and conclusions of law. Finally, he attacks the trial court's award of punitive damages and its ruling on his motion for new trial. Lopez and Cortinas also raise six cross-points requesting additional relief. We affirm.

## BACKGROUND

Lopez and Cortinas lost family members in the collapse of the Amigo Store. Neither speaks English, and both relied on P.J. Trevino to assist them in hiring an attorney. Trevino recommended his employer, attorney William Harrison. Trevino later left Harrison's employ and accepted a job with Cantu. Lopez and Cortinas also became displeased with Harrison and replaced him with Cantu.

Cantu referred Lopez's and Cortinas's cases to a firm of attorneys who assumed a lead role in negotiating a pretrial settlement for all the Amigo Store plaintiffs. Because this resolution involved minors, the settlements were approved by the court. Among other factors, the Amigo Store court reviewed evidence of attorneys' fees and expenses before finding that the settlements were "fair and reasonable and in the best interest of the minor children." These judgments also name the attorneys who represented Lopez and Cortinas, but Cantu is not mentioned.

Harrison, appellees' first attorney, filed an intervention to enforce his original contract with Lopez and Cortinas. In settlement, Harrison accepted $350,000 from the $1,452,-452 in fees shared by Cantu and the claimants' other attorneys. Lopez and his children received a total of $889,458, and the Cortinas family received $873,937.

The main dispute in this case concerns Cantu's conduct in obtaining 45 percent contingency fee contracts from Lopez and Cortinas.

## COLLATERAL ATTACK

In his first point, Cantu argues that the judgment under review was an impermissible collateral attack on the judgment approving

settlement of the Amigo Store claims. We disagree.

■ A final judgment from a court of general jurisdiction is not subject to collateral attack in other courts of equal jurisdiction unless the first judgment is void. *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985) (orig. proceeding). However, the judgment under review is not an attack on the Amigo Store judgments.

■ A collateral attack on a judgment seeks to avoid that judgment's binding force in order to obtain specific relief against which the judgment stands as a bar. *Biaza v. Simon,* 879 S.W.2d 349, 353 (Tex.App.— Houston [1st Dist.] 1994, writ denied) (citing *Crawford v. McDonald,* 88 Tex. 626, 33 S.W. 325, 327 (1895)). In this case, the suit requests no relief barred by judgments approving the Amigo Store settlements.

■ The Amigo Store judgments neither mention Cantu nor specify the fee approved for the attorneys who represented Lopez and Cortinas. The primary binding effect of the Amigo Store judgments is to resolve claims among parties to the dispute involving the collapse of the Amigo Store.

Nothing in the Amigo Store judgments or in the record of the case under review resolves what fee arrangements the Amigo Store court approved. In fact, nothing in the record indicates that the Amigo Store court approved any part of the settlements that did not directly affect the interests of the minors involved. Although the Amigo Store court limited the fees paid by the minors to one third, the minors were actually charged no fees and the entire 45 percent fee and all expenses were deducted from the adults' settlements. The Amigo Store court did not address or approve the conduct of any attorney.

In contrast to the Amigo Store judgments, the case under review is based on Cantu's conduct in obtaining the 45 percent contingency fee contracts. Neither the defendants nor the attorneys mentioned in the judgments of the Amigo Store court are named as parties to the suit under review. The binding effect of the Amigo Store court's settlement approval is not under attack from the trial court that decided the fraud and breach of fiduciary duty claims. Accordingly, we overrule Cantu's first point of error.

## SUFFICIENCY OF THE EVIDENCE

Cantu's points of error six through eleven challenge the legal and factual sufficiency of evidence supporting Lopez and Cortinas's claims for fraud and breach of fiduciary duty. Specifically, Cantu contests four findings of fact and two conclusions of law. *But see Great Global Assurance Co. v. Keltex Properties, Inc.,* 904 S.W.2d 771, 778 (Tex.App.— Corpus Christi 1995, no writ) (conclusions of law are not reviewed for sufficiency but reviewed to determine their correctness).

■ When reviewing challenges to the legal sufficiency of the evidence, we consider only evidence and inferences from the record that support the fact finder's determinations. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993); *Housing Auth. of Corpus Christi v. Massey,* 878 S.W.2d 624, 627 (Tex.App.—Corpus Christi 1994, no writ). We overrule such no evidence points of error if the findings are supported by more than a scintilla of evidence. *Browning–Ferris,* 865 S.W.2d at 928; *Housing Auth. of Corpus Christi,* 878 S.W.2d at 627 (citing *Weirich v. Weirich,* 833 S.W.2d 942, 945–46 (Tex.1992)). In contrast, factual sufficiency challenges require that we consider and balance all the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Twenty– Four Thousand One Hundred Eighty Dollars in U.S. Currency v. State,* 865 S.W.2d 181, 186 n. 4 (Tex.App.—Corpus Christi 1993, writ denied). We overrule such insufficient evidence points of error unless the evidence supporting a finding is so weak as to indicate that the finding is clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). Both of these standards apply equally to jury findings and a trial court's findings of fact. *Southern States Transp., Inc. v. Texas,* 774 S.W.2d 639, 640 (Tex.1989); *Great Global Assurance,* 904 S.W.2d at 778.

Cantu's sixth point of error attacks the finding that he represented that he would charge one third if the matter was settled out

of court or 40 percent if the matter went to court. This finding is supported by Lopez's and Cortinas's testimony. To show the context in which Cantu made this promise, Lopez and Cortinas testified about the formation of their attorney-client relationship with Cantu. They said that Cantu assisted them in firing their prior attorney, William Harrison, after Cantu advised that they had good cause to dismiss Harrison. According to Lopez and Cortinas, Cantu wrote the letters firing Harrison and then agreed to take their cases on the same terms that they had negotiated with Harrison.

Cantu does not dispute that Lopez and Cortinas would have paid a 40 percent contingency fee under their agreements with Harrison, but Cantu initially denied that he wrote the termination letters. Cantu later admitted writing the letters after the court ordered him to produce Lopez's and Cortinas's files, which included return receipts for those letters. The files also contained drafts of other correspondence to Harrison, and these other letters were corrected in Cantu's own handwriting. The draft letters allude to Cantu's fee arrangement as being based on a 40 percent contingency. These letters are circumstantial evidence that supports Lopez's and Cortinas's testimony that Cantu promised to take their cases under the same fee arrangement that they had agreed with Harrison.

Cantu's agreement to charge Lopez and Cortinas the same fee that they had negotiated with Harrison is further supported by testimony from Hipolito Martinez. Martinez said that he was present when Cantu promised to represent Lopez for the same fee that Harrison was going to charge him.

▪ Cantu denied promising that he would accept the same fee arrangement as Harrison. When faced with conflicting testimony, the trier of fact is the sole judge of the witnesses' credibility. *Silva v. Enz*, 853 S.W.2d 815, 817 (Tex.App.—Corpus Christi 1993, writ denied). The trier of fact is free to reach its findings by believing or rejecting some or all of the contradictory testimony when assessing the comparative truthfulness of witnesses. *Id.*

▪ The finding that Cantu represented that he would charge a one third or 40 percent contingency fee is supported by some evidence and is neither clearly wrong nor manifestly unjust. After conducting a factual sufficiency review of all the evidence of record and a legal sufficiency review of evidence supporting the finding, we overrule Cantu's sixth point of error.

By his seventh point of error, Cantu challenges the finding that his employees gave Lopez and Cortinas blank forms reflecting one third and 40 percent fees and that those employees represented that the forms were the same contracts that would be signed after Harrison was fired. This finding is unnecessary to our review of the judgment on Lopez and Cortinas's claims for fraud and breach of fiduciary duty. Consequently, we need not address this point of error. Tex. R.App.P. 90(a).

Similarly, we need not address Cantu's eighth point of error. Under this point, Cantu attacks the finding that he drafted and sent letters firing Harrison and then obtained Lopez's and Cortinas's signatures on employment contracts calling for one third or 40 percent of the amounts recovered. Whether Cantu actually obtained such written contracts is immaterial; oral representations regarding his agreed fee structure are sufficient predicate to Lopez and Cortinas's claim for fraud. *See Powell v. Andrews*, 220 S.W.2d 718, 720–21 (Tex.Civ.App.—Texarkana 1949, writ ref'd n.r.e.). Likewise, unchallenged findings of fact establish that Cantu breached fiduciary duties that came into effect before Lopez or Cortinas signed any contracts. The finding that Cantu obtained signatures on contracts represented to be English translations of his oral representations in Spanish is superfluous to either cause of action underlying the judgment. We do not address Cantu's point of error attacking this finding because it is unnecessary to our review of the judgment. Tex. R.App.P. 90(a).

▪ By his ninth point of error, Cantu contests the finding that he deceptively, and without explanation, obtained Lopez's and Cortinas's signatures on additional contracts that increased the fee to 45 percent. This

finding is supported by the testimony of Lopez and Cortinas. They both explained that Cantu came to their homes and had them sign contracts for a fee up to 40 percent but that Cantu never sent them copies of these contracts as he promised. Lopez and Cortinas also testified that Cantu had them sign additional contracts written in English without translating those contracts or explaining that the subsequent contracts altered the original fee arrangement.

Cantu urges that we focus only on the contracts by which Lopez and Cortinas agreed to pay a 45 percent fee. Cantu concedes, however, that these contracts were only two of several employment agreements that Lopez and Cortinas were asked to execute. Cantu admits that none of his other Amigo Store clients were asked to execute this many different contracts. Cantu also acknowledges that all of these contracts are written in English, and that neither Lopez nor Cortinas would be able to understand the contracts without a Spanish translation. Cantu claims that the agreements were always fully translated before they were signed, but Lopez and Cortinas deny that Cantu translated the contract that set the 45 percent fee.

Lopez's and Cortinas's testimony on this matter is indirectly supported by the terms of the 45 percent contracts. These contracts specifically refer to litigation involving an automobile accident and make no reference to the collapse of the Amigo Store. This obvious mistake conflicts with Cantu's testimony that he fully and accurately translated the contracts before Lopez and Cortinas signed them. These circumstances support an inference consistent with Lopez's and Cortinas's testimony that Cantu did not translate the contracts.

Cantu's testimony on this matter is supported by testimony from one of Cantu's colleagues. Cantu's colleague said that he was present when certain contracts were signed. It is not clear what contracts this colleague may have witnessed, however, because the record contains evidence that Cantu misled his colleagues about negotiations to sign Lopez and Cortinas. The court may have discounted the witness's testimony for

this reason. In any event, it is the trier of fact and not the appellate court that must resolve such conflicts in the evidence. *Caterpillar Tractor Co. v. Boyett*, 674 S.W.2d 782, 788 (Tex.App.—Corpus Christi 1984, no writ). Reviewing the sufficiency of the evidence, we should not intrude upon this exclusive province of the fact finder. *Id.*

The finding that Cantu deceptively obtained the signatures on contracts raising the fee to 45 percent without explaining these subsequent contracts is supported by some evidence and is neither clearly wrong nor manifestly unjust. Having reviewed both the legal and the factual sufficiency of the evidence, we overrule Cantu's ninth point of error.

## CORRECTNESS OF TRIAL COURT'S CONCLUSIONS OF LAW

■ In his tenth point of error, Cantu complains of the trial court's conclusion that his conduct constituted fraud. To conclude that Cantu engaged in fraud, the trial court had to find (1) that Cantu made a material representation, (2) which was false, (3) that Cantu made the representation with knowledge that it was false and (4) with the intention that Lopez and Cortinas would act on it, (5) that Lopez and Cortinas acted in reliance on the representation, and (6) that they thereby suffered injury. *See Padgett v. Bert Ogden Motor's, Inc.*, 869 S.W.2d 532, 535 (Tex.App.—Corpus Christi 1993, writ denied) (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983)).

■ The finding that Cantu represented that Lopez and Cortinas would only be charged up to 40 percent establishes the material representation. The uncontested finding that Lopez and Cortinas were actually charged a fee of 45 percent shows that Cantu's representation was false. The finding that Cantu deceptively obtained Lopez's and Cortinas's signatures on additional contracts that increased the fee to 45 percent shows Cantu's fraudulent intent. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434–35 (Tex.1986) (discussing proof of fraudulent intent). This finding on Cantu's fraudulent intent is bolstered by the court's uncon-

tested conclusion of law that Cantu's conduct was engaged in knowingly. *See Catalina v. Blasdel*, 881 S.W.2d 295, 296 n. 2 (Tex.1994) (determinations expressed as conclusions of law may be construed as findings of fact); *Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299, 301 (Tex.1963) (findings of fact and conclusions of law are construed together and in the greatest possible harmony with judgment). Further uncontested findings establish Cantu's intent that Lopez and Cortinas rely on his representations and Lopez's and Cortinas's harmful reliance on those representations.

■ Based on these findings, the trial court correctly concluded that Cantu's conduct constituted fraud. Accordingly, we overrule Cantu's tenth point of error.

Cantu's eleventh point of error complains of the trial court's conclusion that Cantu breached the fiduciary duties he owed to Lopez and Cortinas. Cantu does not contest the following findings: ·

> Although the initial fee contracts between Plaintiffs and Defendant were executed on August 17, 1989, and August 21, 1989, the confidential relationship between the parties began approximately one month earlier when Cantu gained Plaintiffs' trust and confidence in connection with his assisting them in terminating Attorney Harrison, all with a view toward undertaking representation for himself.

> The evidence is overwhelming that Defendant Cantu took advantage of his clients' trust and confidence in the execution of the 45% fee agreements.

We are bound by such uncontested findings. *Guerra v. Garza*, 865 S.W.2d 573, 575 (Tex. App.—Corpus Christi 1993, writ dism'd w.o.j.) (uncontested findings bind both reviewing court and the parties). These two findings establish the existence of a fiduciary relationship and the breach of duties that such a relationship entails. *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265 n. 4 (Tex. App.—Corpus Christi 1991, writ denied) (preliminary discussion of potential client's legal problems raises fiduciary relationship if attorney enters discussion "with a view toward undertaking representation"); *see generally Archer v. Griffith*, 390 S.W.2d 735

(Tex.1964) (discussing attorney's duties to clients). Accordingly, we overrule Cantu's eleventh point of error.

## ALLEGED DELAY IN RECEIPT OF THE FINDINGS OF FACT

Cantu was neither required to guess the reason that the judge ruled against him nor prevented from properly presenting the issues in this appeal. As a result, Cantu cannot show harm from the alleged delay in his receipt of the trial court's findings of fact and conclusions of law. *In re O.L.*, 834 S.W.2d 415, 418–19 (Tex.App.—Corpus Christi 1992, no writ) (discussing harm analysis for trial court's failure to file findings of fact and conclusions of law). Consequently, we need not address Cantu's points of error two through five, which concern this issue. Tex. R.App.P. 90(a).

## PUNITIVE DAMAGES

■ Under his thirteenth and fourteenth points of error, Cantu contests the factual sufficiency of evidence supporting the award of $400,000 in punitive damages to each plaintiff. Cantu raises only insufficient evidence points of error in his challenge to the award of punitive damages. When reviewing the factual sufficiency of evidence supporting an award of punitive damages, we consider the evidence of record in light of the factors enumerated in *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 28–32 (Tex.1994) (discussing review of punitive damage award in the court of appeals). These factors include (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice. *Kraus*, 616 S.W.2d at 910.

■ In an action for fraud, evidence of the defendant's conscious indifference to the rights of the aggrieved party may warrant the award of punitive damages. *Trenholm*, 646 S.W.2d at 933.

■ Cantu did not contest the trial court's conclusion that he engaged in the

conduct knowingly. The record also indicates that Cantu profited from fees he received for referring Lopez's and Cortinas's cases after he fraudulently obtained employment contracts. Further uncontested findings show that Cantu violated the Texas Disciplinary Rules of Professional Conduct and misrepresented his expertise in order to procure these original contracts. Cantu then fraudulently superseded the original agreements with other contracts that increased his fee. The evidence of these circumstances indicates that Cantu was consciously indifferent to the rights of Lopez and Cortinas. *See also Artripe v. Hughes,* 857 S.W.2d 82, 87 (Tex.App.—Corpus Christi 1993, writ denied) ("Fraudulent misrepresentations used to induce the creation of a contract, coupled with damages caused by the misrepresentation, will support an award for exemplary damages.")

The cause of action based on Cantu's breach of the fiduciary duties that he owed to Lopez and Cortinas will also justify the award of punitive damages. *Crutcher–Rolfs–Cummings, Inc. v. Ballard,* 540 S.W.2d 380, 388 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). The award of punitive damages for the breach of fiduciary duties is consistent with the policy of deterring unconscionable conduct. *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 584 (Tex.1963). Cantu did not contest the trial court's conclusion that his conduct was unconscionable.

We have already discussed the evidence regarding the nature of Cantu's wrong, the character of his conduct, and the degree of his culpability. In his brief, however, Cantu offers another view of this evidence as it reflects on the character of his conduct and the nature of the wrong. Cantu argues that "this is essentially a disagreement over the terms of a contingency fee contract." As a result of his interpretation of the evidence, Cantu concludes that "this was a business transaction in which the Plaintiffs were made whole by an award of actual damages."

We cannot accept Cantu's argument. Punitive damages have a purpose altogether different from making the plaintiff whole. *Moriel,* 879 S.W.2d at 16. Considering all

the evidence, we conclude that the court's findings were neither clearly wrong nor manifestly unjust in regard to the nature of Cantu's wrong, the character of his conduct, and his culpability.

The situation and sensibilities of the parties concerned are best illustrated by four of the trial court's uncontested findings of fact:

> Plaintiffs ... are Mexican citizens who are relatively uneducated, and who neither read, write, nor speak the English language.

> Defendant ... is an attorney at law, licensed to practice in the State of Texas. Cantu is an educated person who reads, writes, and speaks both English and Spanish fluently.

> The Cortinas fee contract was signed on or about August 17, 1989 and the Lopez contract was signed on or about August 21, 1989. Both documents as signed were in English, with Cantu serving as the translator. Neither Plaintiff was given a copy of the contract after it was signed.

> Plaintiffs never refused to sign any document given to them by Defendant Cantu, even though (with the exception of one sentence on the settlement statement) every document which the Plaintiffs signed in connection with their case was in English. Plaintiffs were never given a verbatim Spanish translation of any document.

The record contains direct testimony to support each of these uncontested findings. Considering all the evidence, we conclude that the trial court's punitive damage findings were neither clearly wrong nor manifestly unjust in regard to the situation and sensibilities of the parties.

Finally, the evidence that we have already discussed under our review of the other *Kraus* factors also supports the finding that Cantu's conduct "offends a public sense of justice." Each of the trial court's punitive damage findings based on the *Kraus* factors is supported by factually sufficient evidence. Considering all the evidence, we conclude that the award of punitive damages in a five-to-one ratio to the actual damages is not manifestly unjust or unreasonable. *See Pope v. Moore,* 711 S.W.2d 622, 624 (Tex.

1986) (discussing appellate court's factual sufficiency review of damage awards). This conclusion is reinforced by the fact that the judgment is based on fraud and breach of fiduciary duty instead of a theory that would have warranted a separate award of attorney's fees. *Hofer v. Lavender,* 679 S.W.2d 470, 474–75 (Tex.1984) (punitive damages are an appropriate means of compensating for remote losses or for attorney's fees); *Greater Houston Transp. v. Zrubeck,* 850 S.W.2d 579, 593 (Tex.App.—Corpus Christi 1993, writ denied). We overrule Cantu's thirteenth and fourteenth points of error.

## MOTION FOR NEW TRIAL

By his twelfth point of error, Cantu complains that the trial court erred by overruling his motion for new trial based on newly discovered evidence. Cantu's new evidence chiefly involved Agapito Martinez's affidavit recanting a portion of his trial testimony.

■■■■ The trial court enjoys broad discretion to grant or deny a motion for new trial. *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (orig. proceeding). We will not disturb the trial court's ruling absent a manifest abuse of this discretion. *Id.; Nautical Landings Marina, Inc. v. First Nat'l Bank,* 791 S.W.2d 293, 300 (Tex.App.—Corpus Christi 1990, writ denied). To show that the trial court abused its discretion, Cantu must demonstrate that the court acted without reference to any guiding principles or acted arbitrarily and unreasonably. *See Metropolitan Life Ins. Co. v. Syntek Fin. Corp.,* 881 S.W.2d 319, 321 (Tex.1994) (per curiam) (discussing abuse of discretion and citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)); *see also Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983) (discussing guiding principles that should govern the trial court's ruling on motion for new trial based on newly discovered evidence).

■■■ To become entitled to a new trial based on newly discovered evidence, Cantu had to show (1) that the evidence was discovered too late to be raised at trial, (2) that no lack of diligence on his part prevented earlier discovery of this evidence, (3) that this new evidence is not cumulative, and (4) that the evidence would probably produce a different result in a new trial. *See In re Thoma,* 873 S.W.2d 477, 512 (Tex.Rev.Trib.1994) (citing *Jackson,* 660 S.W.2d at 809).

■■■ The inconsequence of Agapito's testimony is demonstrated by the fact that we addressed Cantu's legal and factual sufficiency points without direct reference to the testimony. Moreover, the testimony that Agapito recanted is less relevant to this case than the testimony that Agapito reaffirmed.

At trial, Agapito contradicted Cantu's testimony by claiming that Cantu offered to represent him for the same fee that he had negotiated with his prior attorney. At the hearing on the motion for new trial, Agapito reaffirmed the truthfulness of this testimony. At trial, Agapito again contradicted Cantu by testifying that Cantu approached him after Cantu's employees explained how they could help him fire his first attorney. At the hearing on the motion for new trial, Agapito confirmed the truthfulness of his trial testimony on this additional matter.

The only part of Agapito's trial testimony that he recanted is testimony regarding the authenticity of a copy of the contract under which Cantu had offered to represent Agapito. At trial, Agapito said that Cantu left him a blank copy of Cantu's standard employment contract. Agapito produced this document, which was entered into the record as plaintiffs' exhibit 38. At the hearing on the motion for new trial, Agapito admitted the exhibit was not given to him by Cantu. Agapito recanted his trial testimony on this point. Agapito said that P.J. Trevino, Cantu's former employee, provided the blank contract only a few months before trial. At the hearing, Agapito testified that Trevino suborned Agapito's false trial testimony with a promise that Trevino would help investigate Agapito's attorney's conduct.

As we discussed above, the judgment does not require findings that Cantu's employees gave Lopez and Cortinas blank copies of contracts or that Cantu obtained signatures on such contracts. None of Agapito's testimony is necessary to any element of Lopez

and Cortinas's claims for fraud or breach of fiduciary duty. As a result, Agapito's testimony at the hearing on the motion for new trial is unlikely to produce a different result in a new trial.

In light of the nature of Cantu's newly discovered evidence, we cannot conclude that the trial court ruled on Cantu's motion for new trial without referring to the relevant guiding principles. Accordingly, we overrule Cantu's twelfth point of error.

### CROSS–POINTS OF ERROR

By six cross-points of error, Lopez and Cortinas seek relief beyond the trial court's award of actual damages plus punitive damages in a five-to-one ratio to the actual damages. Yet it is clear from both the judgment and the record that the trial court considered this award to be the greatest relief to which Lopez and Cortinas were entitled.

The trial court's findings of fact and conclusions of law might have supported judgment for Lopez and Cortinas based on any of several different theories of recovery. But Lopez and Cortinas did not prove that they suffered more than one compensable harm. Consequently, we must consider their various causes of action as alternative theories of recovery rather than additional claims. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991); *Berry Property Management, Inc. v. Bliskey,* 850 S.W.2d 644, 666 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.). Lopez and Cortinas have not shown that the trial court could have granted a more favorable recovery under any of these alternative theories. Accordingly, we cannot agree that the court erred by framing the judgment in terms of fraud and breach of fiduciary duty. *See* TEX. R.CIV.P. 301 (trial court must frame judgment to give parties all relief to which they may be entitled); *Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex.1988).

■ Next, Lopez and Cortinas argue that the trial court should have measured their actual damages as the total amount of the attorneys' fees that they were charged. This measure of damages corresponds nei-ther to the difference between the fee charged and the value of the services ultimately rendered nor to Lopez's and Cortinas's pecuniary loss. *See Sobel v. Jenkins,* 477 S.W.2d 863, 868 (Tex.1972) (difference between price charged and value received is appropriate measure of damages for fraud); *Wright v. Carpenter,* 579 S.W.2d 575, 578 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) (pecuniary loss is an appropriate alternative measure of damages for fraud); *see also Archer,* 390 S.W.2d at 739, 742–43 (attorneys may be compensated for value of services rendered despite breach of fiduciary duties). Moreover, actual damages must be limited to losses proximately caused by the defendant's wrongful conduct. *Trenholm,* 646 S.W.2d at 933; *Wright,* 579 S.W.2d at 578.

■ Lopez and Cortinas would have paid a 40 percent fee under the contracts they signed before they met with Cantu. These facts support the determination that the difference between a 40 percent fee and the 45 percent fee represents the only damages proximately caused by Cantu's misconduct. Regardless of the burden of proof in a suit for breach of fiduciary duty, the court did not err by limiting its award to compensate only for harms caused by the defendant. *See Archer,* 390 S.W.2d at 739–43 (holding that attorneys must prove that their fees are fair but, absent such findings, nevertheless considering evidence to support judgment allowing attorney to retain a portion of fees).

■ Finally, Lopez and Cortinas contend that the trial court erred by neglecting to order a separate award of attorney's fees. In a cause of action for common law fraud, plaintiffs generally do not recover attorney's fees as actual damages. *Kneip v. Unitedbank–Victoria,* 734 S.W.2d 130, 135 (Tex. App.—Corpus Christi 1987, no writ). *But see Schindler v. Austwell Farmers Coop.,* 829 S.W.2d 283, 288 (Tex.App.—Corpus Christi), *aff'd as modified on other grounds,* 841 S.W.2d 853 (Tex.1992) (discussing award of attorney's fees for breach of contract and punitive damages for fraud rising from same injury). Instead, attorney's fees may be recovered as one component of a punitive damage award. *See Transfer Prods., Inc. v.*

*Texpar Energy, Inc.,* 788 S.W.2d 713, 717 (Tex.App.—Corpus Christi 1990, no writ) (citing *Hofer,* 679 S.W.2d at 474).

The trial court rejected Lopez and Cortinas's plea for a separate award of attorney's fees. We consider this ruling in light of the trial court's award of punitive damages in a five-to-one ratio to the actual damages. Under these circumstances, we have no reason to doubt that the trial court addressed the issue of attorney's fees as a part of the punitive damages award.

Lopez and Cortinas have not shown that the trial court framed the judgment in any manner that abridged their entitlement to relief. Accordingly, we overrule Lopez and Cortinas's cross-points.

## CONCLUSION

Having considered each of Cantu's fourteen points of error as well as the six cross-points that Lopez and Cortinas raised, we affirm the judgment of the trial court.