

# NUMBER 13-21-00069-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SUNDIAL OWNER'S
ASSOCIATION, INC.,                                                          Appellant,

v.

NUECES COUNTY, NUECES
COUNTY HOSPITAL DISTRICT,
DEL MAR PUBLIC JUNIOR
COLLEGE DISTRICT, PORT
ARANSAS I.S.D., AND CITY OF
CORPUS CHRISTI,                                                            Appellees.

## On appeal from the 105th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva**
**Memorandum Opinion by Justice Silva**

Appellee Sundial Owner's Association, Inc. (Sundial) appeals the trial court's

denial of its petition for refund of "erroneously paid" property taxes for tax years 2010–2014. For those tax years, Sundial paid to appellees Nueces County, Nueces County Hospital District, Del Mar Public Junior College District (Del Mar), Port Aransas Independent School District (PAISD), and the City of Corpus Christi approximately $349,000. By its first issue, Sundial argues the trial court erred by granting appellees' motion for summary judgment for tax years 2010–2012 based on the statute of limitations. By its second issue, Sundial argues the trial court made various erroneous factual findings and legal conclusions, which caused it to improperly deny Sundial's refund request for tax years 2013 and 2014. We affirm in part and reverse and remand in part.

## I.    BACKGROUND

This case involves property taxes assessed against and paid on behalf of timeshare owners of fifteen condominium units in Mustang Towers Condominiums on Mustang Island in Nueces County, Texas. The condominium units are each split into fifty-one weekly timeshares. Over the years, various corporations have been formed to manage and operate the timeshare units. The corporations include Sundial Interval Ownership Association, Inc. (1983–1985, 1987–1988), Sundial Timeshare Corporation (1983–1985, 1987–1999), and the current corporation, Sundial (1990–present). Membership in Sundial is mandatory for each timeshare owner. Sundial manages the timeshares by ensuring maintenance and cleaning are performed, replacing furniture and décor as needed, sending out necessary paperwork for guests and owners, and paying necessary fees such as insurance, utilities, taxes, and other operating costs.

Previously, Sundial Timeshare Corporation received tax assessment notices and

paid the property taxes to the Nueces County Tax Assessor/Collector (Assessor). However, even after Sundial was incorporated, the Assessor continued to list Sundial Timeshare Corporation as the taxpayer of record. The Assessor continued to send the tax notices to the address on file, which was now Sundial's address.

Jennifer Belt, who testified both in deposition and at trial, has served as the office manager for Sundial since 2009. Belt's testimony in deposition was consistent with her testimony at trial and was undisputed. One of her job duties included preparing and filing the warranty deeds for each timeshare owner. Belt testified that she and her predecessor would receive the tax notices for the units, figure the share owed by each timeshare owner, collect the payments from the owners, then pay the taxes on their behalf using checks from Sundial. Additionally, Sundial would challenge the tax assessment on behalf of the timeshare owners. According to Belt, she would apportion the tax amount due from the timeshare owners based on the value of their particular week owned, because weeks in the summer were worth more than weeks in the winter. However, in 2015, when Belt went to negotiate the tax assessment, the appraisal district told her they could not speak to her because she represented "Sundial Owner's Association," not "Sundial Timeshare."

Belt testified that Sundial would collect an annual maintenance fee from the timeshare owners, which covered insurance and monthly maintenance, and would forward that fee to Mustang Towers Condominiums. During the relevant years, the maintenance fee also included the tax amount attributed to each timeshare owner. However, some of the timeshare owners would not pay their "maintenance fee" which would lead to repossession of the timeshare unit by Sundial.

3

The following exchange occurred during trial:

[Sundial's Counsel]:    Ms. Belt, do you have an opinion whether or not you made a mistake paying the taxes for 2013 and '14?

[Belt]:    Yes, —I did not know about it.

The Court:    I did[ not] hear your answer, ma'am, it was garbled.

[Belt]:    Yes, I paid them, not knowing.

Mustang Towers Condominium's declaration of condominium was admitted as an exhibit. Relevant to this case, the declaration provided that

[Sundial], through its Board, shall have the power to fix and determine from time to time the sum or sums necessary and adequate to provide for the operation of apartments committed to interval ownership. The procedure for the determination of such operational fee shall be as set forth in the Bylaws of the Association. The operational fee shall include, but shall not be limited to, the following:

. . . .

(6) Personal property, real estate, and any other applicable taxes . . . .

Further, Sundial's articles of incorporation were admitted as an exhibit. The articles provided that:

The purpose or purposes for which the corporation is organized are:

1.  To administer and operate the interval ownership apartments in the Mustang Towers Condominium, a condominium project established pursuant to a Declaration of Condominium filed of record in the office of the Nueces County Clerk.

2.  To serve as the voting entity on behalf of unit week owners in the Mustang Towers Council of Co-Owners, Inc., a Texas non-profit corporation.

Much of the remaining testimony at trial related to ancillary matters not relevant to whether Sundial erroneously paid the taxes. For example, Sundial elicited testimony as

4

to who was responsible for Sundial's mail being forwarded to its counsel, what software the Assessor used, and what policies the Assessor had in place as it relates to timeshare owners.

Prior to trial, appellees[1] filed motions for summary judgment, arguing, in relevant part, that Sundial failed to comply with Texas Tax Code § 31.11(c), which provides that "an application for a refund must be made within three years after the date of the payment or the taxpayer waives the right to the refund." TEX. TAX CODE ANN. § 31.11(c). However, the governing body of the taxing unit may extend the deadline by up to two years upon a showing of good cause by the taxpayer. *Id.* § 31.11(c-1). Sundial paid the taxes for tax years 2010–2014 on January 21, 2011, January 31, 2012, January 30, 2013, January 31, 2014, and January 30, 2015, respectively, and applied for a refund for all years on December 9, 2015. Sundial responded, stating that "[b]ecause the tax collector denied the refund application[, Sundial] never had the duty to seek an extension," so their deadline was five years from the dates of payment, not three. Sundial cited provisions of the Texas Government Code relating to statutory construction, arguing that seeking an extension was a "futile action[] that [had] no meaningful purpose" and should not be required to do so. *See* TEX. GOV'T CODE ANN. § 311.021 (Intention in Enactment of Statutes); *id.* § 311.023 (Statute Construction Aids). Sundial also moved for summary judgment. The trial court granted appellees' motion for summary judgment for tax years

---

[1] Nueces County, Nueces County Hospital District, and the City of Corpus Christi filed a joint traditional and no-evidence motion for summary judgment while PAISD filed its own traditional motion for summary judgment. Both motions argued that Sundial failed to timely apply for a refund for tax years 2010-2012, thus waiving the right to a refund. Del Mar subsequently filed a motion joining and adopting Nueces County, Nueces County Hospital District, and the City of Corpus Christi's motion for summary judgment.

2010, 2011, and 2012, finding that Sundial did not timely apply for refunds for those years. It denied the remainder of appellees' summary judgment motion and the entirety of Sundial's motion.

At the end of trial, the trial court denied Sundial's request for a refund of the 2013 and 2014 tax year payments. The trial court entered a take nothing judgment in favor of appellees. The trial court also entered findings of fact and conclusions of law pursuant to Sundial's request but declined to enter additional findings and conclusions that Sundial requested. This appeal followed.

## II.    TAX YEARS 2010, 2011, AND 2012

### A.    Standard of Review

We review a trial court's grant of a motion for summary judgment de novo. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022). "When both parties move for summary judgment and the trial court grants one motion and denies the other, . . . we review both sides' summary judgment evidence and render the judgment the trial court should have rendered." *Id.* (quoting *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013)). When a trial court specifies the grounds on which it grants summary judgment, we limit our review to those specified grounds.[2] *Delaney v. Univ. of Hous.*, 835 S.W.2d 56, 58 (Tex. 1992); *cf. Rosetta Res. Operating, LP* 645 S.W.3d at 226 ("When a trial court's order granting summary judgment does not specify the grounds on

---

[2] We note that we may consider the remaining grounds for summary judgment as a matter of judicial efficiency. *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Thomas v. Farris*, 175 S.W.3d 896, 898 (Tex. App.—Texarkana 2005, pet. denied) ("An appellate court may affirm the judgment on any grounds properly raised before the trial court, even when the trial court grants summary judgment specifically on fewer than all grounds asserted."). However, we do not have the benefit of briefing on the remaining issues each party urged for summary judgment as neither party argues the trial court erred by denying summary judgment on any other ground.

6

which its order is based, the appealing party must negate each ground upon which the judgment could have been based.").

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party that moves for traditional summary judgment bears the burden of showing "that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* at 216; TEX. R. CIV. P. 166a(c).

### B.      Applicable Law

A taxpayer who makes an erroneous or excessive payment on real property taxes may apply to the tax collector for a refund. TEX. TAX CODE ANN. § 31.11(a). If the tax collector determines that the payment was erroneous or excessive, the auditor for the taxing unit must agree with the collector's determination before a refund may be issued; additionally, the governing body for the taxing unit may also be required to agree to the refund, depending on the amount of the refund and population of the county. *Id.* If the taxpayer fails to apply for a refund within three years from the date of payment, the taxpayer waives the right to the refund; however, the governing body of the taxing unit may extend the deadline for a single period not to exceed two years upon a showing of good cause by the taxpayer. *Id.* § 31.11(c), (c-1).

### C.      Analysis

As a preliminary matter, we recognize that appellees concede that the trial court erred by granting summary judgment for tax year 2012 as untimely. *See id.* § 31.11(c).

Accordingly, we focus our review on tax years 2010 and 2011. As to those years, Sundial does not argue that it applied for a refund within three years from the date of payment; rather, it argues that it has demonstrated "good cause" as a matter of law and that it was not required to seek a two-year extension from the taxing units. We disagree. The statute is clear that only the "governing body of taxing unit" may grant an extension—nothing in the statute mandates or even permits a court to extend the deadline. *See id.* § 31.11(c-1).

Sundial insists that "[t]he law does not demand futile and non-objective oriented obstacles to give effect to the intent of it." In other words, Sundial urges this Court to disregard the plain language of the statute and instead hold that when the taxing authority denies the refund, the application period is automatically extended by two years. We decline to do so as our role is to interpret and apply the plain meaning of the statute's language and give effect to the Legislature's intent. *See Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325–26 (Tex. 2017) ("[W]e take statutes as we find them and refrain from rewriting the Legislature's text."). Here, the Legislature granted the governing body of the taxing authority—not the courts— permission to extend the application deadline. *See* TEX. TAX CODE ANN. § 31.11(c-1). Further, the Legislature made the extension permissive, not mandatory. *See* TEX. GOV'T CODE ANN. § 311.016; *see also In re Estate of Washington*, 289 S.W.3d 362, 368 (Tex. App.—Texarkana 2009, pet. denied) ("'May' does not mean 'shall' or 'must be.'").

Here, it is undisputed that the application for a refund for tax years 2010 and 2011 was made more than three years after the payments were made. Further, it is undisputed

8

that the governing bodies of the taxing authorities did not grant an extension to the three-year deadline. Accordingly, Sundial waived its right to a refund for tax years 2010 and 2011. The trial court did not err by granting appellees' motions for summary judgment for those tax years. However, as appellees concede, the trial court did err by granting summary judgment based on an untimely application for tax year 2012 as Sundial did apply for a refund before the third anniversary of the payment. *See Delaney*, 835 S.W.2d at 58 (limiting our review of summary judgment to the grounds specific in the order). As such, we overrule Sundial's first issue as it relates to tax years 2010 and 2011 and sustain it for tax year 2012.

## III. TAX YEARS 2013 AND 2014

By its second issue, Sundial argues the trial court erred by denying its refund request for tax years 2013 and 2014 because it established a right to refund under the tax code. *See* TEX. TAX. CODE ANN. § 31.11. In doing so, Sundial challenges several findings of fact issued by the trial court.

### A. Standard of Review and Applicable Law

In any case tried to the bench, a party may request that the trial court state in writing its findings of fact and conclusions of law. TEX. R. CIV. P. 296. "The primary purpose for findings of fact is to assist the losing party in narrowing his issues on appeal by ascertaining the true basis for the trial court's decision." *Izen v. Laine*, 614 S.W.3d 775, 794 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). After a trial court has issued its findings of fact and conclusions of law, a party may request additional or amended findings or conclusions. TEX. R. CIV. P. 298. "No findings or conclusions shall be deemed

9

or presumed by any failure of the court to make any additional findings or conclusions."

*Id.*

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.

*Id.* R. 299.

"[T]he trial court's findings of fact and conclusions of law must be construed together and in the greatest possible harmony with [the] judgment." *Bleeker v. Villarreal*, 941 S.W.2d 163, 169–70 (Tex. App.—Corpus Christi–Edinburg 1996, writ dism'd by agr.) (first citing *Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299, 301 (Tex. 1963); and then citing *Cantu v. Butron*, 921 S.W.2d 344, 351 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied)).

When a complete record is filed on appeal, we review findings of fact for legal and factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *see also Dittman v. Cerone*, No. 13-11-00196-CV, 2013 WL 5970356, at *3–4 (Tex. App.—Corpus Christi–Edinburg Oct. 31, 2013, no pet.). When reviewing a finding for factual sufficiency, an appellate court may not substitute its own judgment for the factfinders, but instead should weigh all the evidence presented and determine whether the finding was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019). When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue

10

on which it had the burden of proof, as here, that party can prevail only if it demonstrates that the evidence conclusively established all vital facts in support of the issue. *Down Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In a legal sufficiency review, we assume that the factfinder resolved any disputed facts in favor of its finding and disregard all evidence that a reasonable factfinder could have disbelieved. *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020). However, we may not disregard undisputed facts that do not support the finding. *Id.* "In a bench trial, the trial court, as the trier of fact, is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Townsend v. Vasquez*, 569 S.W.3d 796, 808 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). "The trial court may choose to believe some witnesses over others." *Id.*

We review a trial court's conclusions of law de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *see also Dittman*, 2013 WL 5970356, at *4. "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *BMC Software Belgium, N.V.*, 83 S.W.3d at 794.

"Our fundamental goal when reading statutes 'is to ascertain and give effect to the Legislature's intent.'" *Cadena Comercial USA Corp.*, 518 S.W.3d at 325 (quoting *Tex. Mut. Ins. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012)). "To do this, we look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results." *Id.*

All real property in the state of Texas is taxable unless otherwise exempt by law.

11

TEX. TAX CODE ANN. § 11.01(a). Real property taxes are owed by the person who owns the property on January 1 of the tax year. *Id.* § 32.07(a). As discussed above, a taxpayer who erroneously pays taxes or overpays taxes may seek a refund for that payment. *Id.* § 31.11(a).

## B.      Analysis

We begin our analysis by reviewing what is required for a taxpayer to be entitled to a refund. *See id.* § 31.11(a). First, the taxpayer must have made a payment; moreover, that payment must have been made erroneously or in excess. *Id.* The taxpayer must then timely apply for a refund from the tax collector of the taxing unit. *Id.* Here, the dispute is not that Sundial paid taxes in excess, but that it paid the taxes erroneously. The Legislature did not define "erroneously" in the context of the statute; thus we use its ordinary and plain meaning. *See Cadena Comercial USA Corp.*, 518 S.W.3d at 325. Erroneously means containing or characterized by error. *Erroneously*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/erroneously (last visited Feb. 18, 2023). Error means "an act that through ignorance, deficiency, or accident departs from or fails to achieve what should be done." *Error*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/error (last visited Feb. 18, 2023).

The trial court concluded that "[Sundial]'s tax payments for the years in question were not made 'erroneously' within the meaning of [§] 31.11 of the Texas Tax Code." Thus, we review the trial court's findings of fact to determine whether they support this conclusion of law. *See BMC Software Belg., N.V.*, 83 S.W.3d at 794. Among the trial

12

court's findings of fact were that "[Sundial] made payments of the taxes for the years in question voluntarily and not as a result of fraud, duress, or mutual mistake of fact" and that Sundial acted as agent for the timeshare owners, acted as the alter-ego of the timeshare owners, and had apparent authority to pay the taxes on behalf of the timeshare owners.

In this case, it is undisputed that the owners include Sundial and each timeshare owner.[3] TEX. TAX CODE ANN. § 32.07(a). Although the notice of tax due statement was mailed to "Sundial Timeshare Corporation," the tax was assessed against each unit as a whole. "Sundial Timeshare Corporation" is not an owner of any unit or timeshare and was dissolved in 1999. Further, Belt testified that Sundial sent an invoice to each timeshare owner for maintenance fees, which included each timeshare owner's share of the real property taxes. Belt would negotiate to lower the appraised property value on behalf of Sundial and the other timeshare owners and then pay the real property taxes on behalf of Sundial and each timeshare owner.

Although Belt provided conclusory testimony that she paid the taxes in error, she did not explain how or why she believed it was an error. *See Townsend*, 569 S.W.3d at 808 (holding that the trial court may disbelieve the testimony of one witness and believe another). On appeal, Sundial insists that Belt paid the taxes by "error" because the notice of tax due was mailed to "Sundial Timeshare Corporation" and because Sundial does not own the property in fee simple; however, the evidence otherwise supports the finding that

---

[3] In her deposition, Belt testified that Sundial only owned weeks that were repossessed but did not otherwise own any week outright. At trial, Sundial introduced an exhibit that showed it owning over forty total weeks spread between twelve condominiums. It is unclear what, if any, ownership Sundial had on January 1 of each tax year. *See* TEX. TAX CODE ANN. § 32.07(a).

13

the payments were made voluntarily, and that Sundial had the apparent authority to do so. *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (holding that apparent authority arises "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise") (quoting *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex.1998)); *see also Ortiz*, 917 S.W.2d at 772; *Townsend*, 569 S.W.3d at 808 (holding that the trial court is the sole judge of the witnesses' credibility and weight to be given to their testimony). For example, Sundial's articles of incorporation provided that it was formed for the purpose of administering and operating the interval ownership for the units in Mustang Towers and references the declaration of condominium filed with Nueces County. The declaration of condominium specifically permits Sundial to collect fees from the owners and directs that the fees "shall include" real property taxes. Sundial argues this merely gave it *permission* to collect the taxes; however, Sundial does not contest that it in fact collected the real property taxes from the other timeshare owners and paid the taxes on behalf of itself and the other owners. Additionally, if a timeshare owner failed to pay their share of the property taxes, Sundial would foreclose on and repossess the weekly ownership.

Sundial argues that it could not have acted as the agent for the other timeshare owners because the proper written authorization was not completed. *See* TEX. TAX CODE ANN. § 1.111(b) (requiring written authorization before a party may act as an agent of another for any purpose under Title 1 (Property Tax) of the Texas Tax Code). However,

14

§ 1.111(b) does not explicitly prohibit one timeshare owner or the corporate manager from collecting and paying taxes on behalf of the other timeshare owners. Indeed,

> [a]ny person who receives or collects an ad valorem tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the taxing unit and is liable to the taxing unit for the full amount collected plus any accrued penalties and interest on the amount collected.

*Id.* § 32.07(d). By collecting the property tax payments from the other timeshare owners, Sundial subjected itself to potential liability if the tax payments were not made. *See id.* § 32.07(e).

Having reviewed the evidence presented at trial, we conclude that the evidence was legally and factually sufficient to support the trial court's findings that Sundial (1) voluntarily paid the property taxes and not as a result of fraud, duress, or mutual mistake; (2) acted with apparent authority to pay the taxes on behalf of the owners; (3) acted as the alter ego of the remaining timeshare owners; and (4) acted as an agent for the other timeshare owners. *See Ortiz*, 917 S.W.2d at 772. Further, these findings conform to the trial court's conclusion that Sundial did not erroneously pay the taxes for 2013 and 2014 tax years. *See* Tex. Tax. Code Ann. § 31.11; *Bleeker*, 941 S.W.2d at 169–70; *see also Error*, Merriam-Webster- Online Dictionary, https://www.merriam-webster.com/dictionary/error (last visited February 18, 2023). Because Sundial did not conclusively establish that the taxes were erroneously or excessively paid, the trial court did not err in rendering a take nothing judgment as to tax years 2013 and 2014, and we need not review the remaining findings of fact that Sundial challenges. *See Bleeker*, 941 S.W.2d at 169–70. Sundial's second issue is overruled.

15

## IV.    CONCLUSION

We affirm the trial court's judgment as to tax years 2010, 2011, 2013, and 2014, and reverse and remand as to tax year 2012.

CLARISSA SILVA
Justice

Delivered and filed on the
9th day of March, 2023.

16