**Ex parte John MITCHELL, Relator.**

**No. 08–89–00355–CV.**

Court of Appeals of Texas,
El Paso.

Dec. 27, 1989.

Glen Sutherland, El Paso, for relator.

Larry H. Schwartz, Schwartz, Earp, McClure, Cohen & Stewart, El Paso, for respondent.

Before OSBORN, C.J., and
WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

Relator, John Mitchell, brought this original habeas corpus proceeding as a result of having been committed to jail for failure to obey orders to pay child support. The Relator complains that the child support provisions of a divorce decree, dated July 15, 1975, are too vague and ambiguous to be enforceable and that the contempt order is impossible of performance because he does not have the material means to comply with the purgative conditions. The application is granted and Relator is discharged from custody.

■ In his points of error one and two, Relator avers that the provisions relating to child support are not sufficiently clear, specific and unambiguous to give him notice of "what he is ordered to do or not to do" because of the use of the word "should" in the sentence describing where payments are to be made. Those provisions are as follows:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that the Respondent be appointed possessory conservator of the minor children in this cause and that he be entitled to reasonable visitation rights. IT IS ORDERED, ADJUDGED AND DECREED, Respondent contribute to the support of said children until each of said children reaches the age of eighteen (18) years of age. The child support payment to be made per child is FIVE HUNDRED AND NO/100 DOLLARS per month commencing the 1st day of August, 1975. Said payments *should* [emphasis ours] be made to the Registry of the Court in care of the District Clerks [sic] Office, Fourth Floor City County Building, El Paso, Texas.

Relator's point is or seems to be that the word "should" is permissive, thereby making all of the provisions relating to child support unclear and ambiguous, and thus making those provisions unenforceable by contempt.

According to Black's Law Dictionary, Fifth Edition, 1979, "should" is "[t]he past tense of shall; ordinarily implying duty or obligation; although usually no more than an obligation of propriety or expediency, or a moral obligation, thereby distinguishing it from 'ought.'" In 1975, when the divorce decree in this case was written, it was not uncommon to use precatory, as opposed to mandatory, language with regard to paying support through the office of the district clerk, the obvious purpose being to facilitate proof in the event of a challenge. Even where it is mandatory that payments be made into the registry of the court, if an obligor can prove that payments have been made directly or through another person to the managing conservator, the obligor cannot be held in contempt. No cases have been found where an obligor, having otherwise paid child support on time and in the proper amount, has been found in contempt specifically for failing to pay to or through an agency designated in the order. The order in the instant case is quite specific and clear that Relator was being required to pay child support each month in an amount certain for each child under eighteen years. There is evidence that the Relator for a considerable period of time complied with the order by paying monthly child support in some amount at the office of the district clerk before deciding that the order was too ambiguous to be obeyed. Relator was found in contempt for not paying child support, not for paying child support in some place other than the district clerk's office.

In *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967), a case cited by Relator, Slavin had been ordered to pay $150.00 per month for the support of three children "until said children attain the age of eighteen years." The trial court found him in contempt for failing to continue to pay $150.00 per month after the oldest child became eighteen. On appeal, the court held that the specific order for which he was found in contempt was ambiguous as to what amount was to be paid as each child reached eighteen. The court concluded that in order for a person to be held in contempt for disobeying a·decree, the decree must state the details of compliance in clear, specific and unambiguous terms so that the "person will readily know exactly what duties or obligations are imposed upon him." Relator cites other cases to support his proposition. In all of those cases, the contemnor had been found in contempt of a particular portion of an order later found by the appellate court to be ambiguous and unenforceable. In our case, Relator was found to be in contempt of that portion of an order that we conclude was reasonably clear and unambiguous. Points of Error Nos. One and Two are overruled.

In his third and fourth points, Relator brings forth legal and factual insufficiency challenges to the trial court's finding that he had, at the time of the hearing, the ability to pay all of the child support arrearages set forth in the contempt order, totalling some $61,800.00. A statement of facts has been filed. The hearing was conducted by a master. Although the contempt order does not comport with the master's verbal order at the time of the hearing (the master found Relator in contempt for support payments due from 1983 through January 1988, whereas the written order found him in contempt from January 1980 through January 1988), the order was signed by a district judge on the recommendation of the master. We note also that the contempt order found Relator in contempt for failing to pay $1,000.00 per month after April 1987 when the payments should have been reduced to $500.00 in accordance with the child support provision of the decree. Although we conclude from the testimony that Relator was a recalcitrant father who paid child support more on his terms than on the terms of the decree and who may well deserve to be punished for his contemptuous conduct, we have difficulty finding in the record any evidence to support the master's implied

finding that Relator has the present ability to come up with the sum of $6,000.00 to buy his release from jail on the civil contempt, much less the ability to pay the arrearages, as found by the master. From the evidence and his affidavit, we believe that Relator has conclusively established his inability to purge himself of the contempt and obtain his release. *Ex parte Gonzales,* 414 S.W.2d 656 (Tex.1967); *Ex parte Andrews,* 566 S.W.2d 668 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ); *Ex parte Hennig,* 559 S.W.2d 401 (Tex.Civ. App.—Dallas 1977, no writ). On that basis alone, we are inclined to sustain Relator's Points of Error Nos. Three and Four.

■ The more serious problem, touched on in Relator's argument under his third and fourth points but not directly encompassed in the language of those points, is the lack of due process in the contempt order. The paragraphs of the order in question are as follows:

*Civil Contempt*

IT IS FURTHER ORDERED that Respondent, JOHN MITCHELL, shall be confined in the county jail of El Paso County, Texas, until Respondent has complied with the following orders. IT IS ORDERED that Respondent:

1. pay $6,000.00 to Movant, through the District Clerk's Office, Fourth Floor, El Paso City–County Building, El Paso, Texas, as child support arrearage, *and shall immediately and forthwith be brought before this Court for assessment of criminal contempt, attorney's fees and costs.* [Emphasis added].

■ As the emphasized portion of the order shows, Relator had no clear way in which to purge himself of his contempt. Assuming he had the ability to pay the required $6,000.00, that payment would not gain him freedom but only buy him the "privilege" of being hauled back before the judge for the imposition of punitive or criminal contempt. As the order alludes, there are two types of contempt: civil or coercive contempt and criminal contempt, sometimes called punitive contempt. Criminal contempt, limited by statute to a fine of not more than $500.00 and confinement

in jail for up to six months, Tex.Gov't.Code Ann. sec. 21.002, has the purpose of punishing the contemnor for some past conduct or disobedience to a court order which constitutes an affront to the dignity and authority of the court. *Ex parte Werblud,* 536 S.W.2d 542 (Tex.1976). Civil contempt, on the other hand, is intended to persuade or coerce the contemnor to obey an order of the court. The confinement is conditional upon obedience and therefore the civil contemnor "carries the keys of [his] prison in [his] own pocket." *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Ex parte Werblud,* 536 S.W.2d at 545. Both kinds of contempt may be combined in one order and typically are in the pattern of the criminal contempt being first assessed for the past disobedience followed by the civil contempt requiring the contemnor to pay a sum certain in order to gain his release. *Ex parte Dabau,* 732 S.W.2d 773, 775 (Tex.App.—Amarillo 1987, no writ); *Ex parte Hosken,* 480 S.W.2d 18, 23 (Tex.Civ.App.—Beaumont 1972, no writ).

■ As a civil contempt, the order is unacceptable for two reasons: first, the Relator does not know how he can purge himself of the contempt since by paying the required amount, he obtains not freedom but only the privilege of being taken before the judge for the assessment of some unknown punishment, and second, the order uses the threat of that criminal contempt punishment to coerce compliance with the purgative provision. As a possible criminal contempt, the order is constitutionally unacceptable as a denial of due process since it does not specify the punishment within the contempt order, but like the sword of Damocles, leaves the matter hanging over the Relator's head. If it is to be enforceable, a contempt order must be clear and unambiguous. *Ex parte Calvillo Amaya,* 748 S.W.2d 224 (Tex.1988, concurring opinion); *Ex parte Brooks,* 604 S.W.2d 463 (Tex.Civ.App.—Tyler 1980, no writ). Compare *Ex parte Parr,* 505 S.W.2d 242 (Tex. 1974), where the court held that the attempted imposition of an additional sixty days in jail to a previously ordered ninety

days without a further hearing was violative of due process.

For the foregoing reasons, we hold that the contempt order is void. Accordingly, the Relator is ordered discharged.