**In re Mark A. CANTU.**

**Ancillary to: In re: Robert W. Johnson, Jr., Juan Lopez Butron, and Luis Enrique Cortinas Villarreal.**

**Nos. 13–97–550–CV, 13–97–558–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 12, 1997.

Order on Rehearing Nov. 20, 1997.

Order on Motions Feb. 19, 1998.

---

Ronald G. Hole, Micaela Alvarez, Law Office of Ronald G. Hole, McAllen, R.E. Lopez, Jr., Brownsville, Robert W. Johnson, Jr., Corpus Christi, for Relators.

Jose E. Garcia, William L. Hubbard, Law Office of Jose E. Garcia, Cynthia G. Gutierrez, Ellis, Koeneke & Ramirez, McAllen, Stephen W. Schueler, Kem T. Frost, Windstead Sechrest & Minick, Houston, Ofelia De Los Santos, Edinburg, for Real Parties in Interest.

## JUDGMENT OF CONTEMPT

SEERDEN, Judge.

On the 24th day of October, 1997, Mark A. Cantu appeared before the Court of Appeals, Thirteenth District, sitting en banc at Edinburg, Hidalgo County, Texas, to show cause why he should not be held in contempt of court for failing to obey an order of this Court, which issued on September 26, 1997, enjoining Mark A. Cantu from asking for additional relief that would impede or prevent the collection of a final judgment rendered by the 138th District Court of Cameron County, Texas, in the underlying case styled *Juan Lopez Butron, et al. v. Mark. A. Cantu,* cause no. 91–11–8115–B. The present enforcement proceeding stems from Cantu's continuing attempts to prevent and impede execution of that judgment in violation of this Court's Injunction.

## II. History of the Litigation

### A. Judgment of the 138th District Court of Cameron County

Juan Lopez Butron and Luis Enrique Cortinas Villarreal (collectively "Butron") originally hired Cantu as their attorney to represent them in a wrongful death action on behalf of relatives killed in the collapse of the Amigo Store in Brownsville, Texas. Cantu obtained a 45% contingent fee award on Butron's settlement. Butron then sued Cantu for fraud and breach of fiduciary duty with regard to the fee award, and the 138th District Court of Cameron County, Texas, granted a May 1993 judgment against Cantu for an amount in excess of $1,000,000. The judgment included $800,000.00 in punitive damages. Following the trial court's denial of Cantu's motion for new trial on the basis of new evidence of fraud, Cantu appealed that judgment to this Court and posted a supersedeas bond to prevent execution during the appeal. This Court affirmed the May 1993 judgment, the Texas Supreme Court denied writ of error, and our mandate issued on February 19, 1997. *See Cantu v. Butron,* 921 S.W.2d 344 (Tex.App.—Corpus Christi 1996, writ denied).

On August 26, 1996, Cantu filed a Bill of Review with the 138th District Court also grounded in the discovery of new evidence of fraud and conspiracy. The trial court denied Cantu's bill in March of this year and that issue is the subject of a related appeal pending before this Court. During the pendency of the Bill of Review proceeding, Cantu asked for a temporary injunction staying enforcement of the underlying judgment pending the outcome of the bill of review. The trial court denied the temporary injunction

and that issue is in this Court now on accelerated appeal.

### B. Initial Proceedings Before the 93rd District Court of Hidalgo County

On June 4, 1993, Mark A. Cantu and his wife, Roxanne Cantu, brought a separate action against Butron in the 92nd District Court of Hidalgo County (later transferred to the 93rd District Court of Hidalgo County) for wrongful garnishment in connection with Butron's [1] attempts to collect his judgment against Cantu. In that lawsuit, Cantu complains, among other things, that the judgment of the 138th District Court is void. The 93rd District Court issued two interlocutory orders preventing execution of the May 1993 judgment:

— June 30, 1995, a partial summary judgment declaring the May 1993 judgment by the 138th District Court void and a temporary restraining order providing "[n]o process or execution may be had upon that judgment"; and

— February 11, 1997, a temporary injunction specifically enjoining Butron and his attorney from collecting his judgment against Cantu along with a Writ of Attachment directed against the money Cantu had paid into the registry of the 138th District Court in connection with that judgment.

In March of this year, Butron brought an accelerated appeal from the February 1997 temporary injunction, and this Court ordered that injunction dissolved on the ground that it was beyond the power of the 93rd District Court to enjoin the collection of a judgment of the 138th District Court. *See Butron v. Cantu,* 960 S.W.2d 91 (Tex.App.—Corpus Christi, 1997, n.w.h.) (not yet reported).

After this Court handed down its opinion in the accelerated appeal, Butron moved to set aside the partial summary judgment as well. The 93rd District Court, however, denied Butron's motion and declined to set aside the partial summary judgment. In addition, on September 4, 1997, the 93rd District Court granted an additional temporary restraining order preventing Butron from collecting his judgment by prohibiting Universal Security of America, Inc., the surety on the supersedeas bond, from demanding payment of a letter of credit issued by International Bank of Commerce as security for the bond.

### C. Initial Proceedings Before the 370th District Court of Hidalgo County

In September, Cantu filed yet another lawsuit, this time against Universal Surety and International Bank of Commerce in the 370th District Court of Hidalgo County, seeking injunctive relief. On September 17, 1997, that court issued a TRO substantially similar to that already granted by the 93rd District Court, prohibiting Universal Surety from making demand for funds under the letter of credit issued by the International Bank of Commerce.

### D. The Original Proceeding Before This Court.

Butron sought mandamus relief from this Court to set aside the partial summary judgment and TRO of the 93rd District Court, writ of prohibition to prevent the trial court from issuing subsequent orders of the same nature, and an injunction to prevent Cantu from continuing to ask for such relief before other courts of this state. We granted Butron's request in *In re Johnson,* 961 S.W.2d 478 (Tex.App.—Corpus Christi, 1997, n.w.h.)(corrected opinion October 2, 1997) (not yet reported). In that proceeding, we conditionally granted a writ of mandamus directing the 93rd District Court to vacate the temporary orders issued by it which interfered with the execution and enforcement of the judgment of the 138th District Court. We further granted a writ of prohibition prohibiting that court from issuing any such orders in the future with regard to the judgment of the 138th District Court. Finally, we granted an injunction, against Cantu's property.

---

1. Immediately upon receipt of judgment in their favor, the Butrons filed a garnishment action

enjoining Mark A. Cantu and Roxanne Cantu, their agents, attorneys or anyone acting on their behalf, from filing any additional lawsuit or asking for additional relief within any pending action, whether in law or equity, that would impede or prevent the collection of the final judgment rendered by the 138th District Court.

### E. Actions Following Our September 26th Order

Pursuant to this order, on September 29, the 93rd District Court set aside three of its prior orders. However, Cantu successfully opposed Butron's motion to strike that portion of Cantu's pleadings seeking a declaratory judgment that the 138th District Court judgment was void.

Returning to the 370th District Court of Hidalgo County, on October 1, Cantu opposed Butron's motion to dissolve the TRO granted there. Further, Cantu moved to have the TRO made permanent. In support of his motion, Cantu filed a copy of the (now rescinded) partial summary judgment declaring the 138th District Court of Cameron County judgment void. In response, on October 3, Butron filed the motion for contempt currently before us.

Apparently dissatisfied with the relief he was finding elsewhere, on October 6, Cantu filed a case styled *Cantu v. Johnson, et al.* and docketed as C–5281–97–C in the 139th District Court of Hidalgo County. He applied for a TRO enjoining Butron's counsel from executing on letters of credit securing the supersedeas bond associated with the 138th District Court of Cameron County judgment. This is substantially identical to the TRO granted by the 370th District Court of Hidalgo County, granted on September 18th, simply pursued in a different venue.

The following day, October 7th, Cantu sought and obtained writ of attachment from the 93rd District Court of Hidalgo County attaching the letters of credit securing the supersedeas bond, the funds held by the bonding company and the funds securing such bond deposited into the registry of the Cameron County District Clerk. This action prompted Butron to file a motion to stay proceedings with this Court on October 9th.

Butron claims by his motion to hold Cantu in contempt that Cantu has violated the injunction issued by this Court by continuing attempts to prevent execution of the judgment. Specifically, Butron points to the pleadings that have since been filed by Mark A. Cantu in the 93rd, 139th and the 370th District Courts that allegedly impede collection of the judgment of the 138th District Court in violation of this Court's injunction.

### III. Cantu's Challenge to the Judgment of the 138th District Court.

Cantu complains generally that the judgment of the 138th District Court should be declared void because it was procured by a conspiracy and by perjured testimony.

■ A void judgment is a nullity and subject to either direct or collateral attack. *Fulton v. Finch*, 162 Tex. 351, 346 S.W.2d 823, 827 (1961). However, the Texas Supreme Court has also consistently held that:

Unless a judgment of a court of general jurisdiction is void, it is not subject to collateral attack in another court of equal jurisdiction. *Austin Independent School District v. Sierra Club*, 495 S.W.2d 878, 881 (Tex.1973). .... All errors other than jurisdictional deficiencies render the judgment merely voidable, and such errors must be corrected on direct attack. When time for direct attack by appeal has elapsed, a bill of review in the court rendering the initial judgment is the exclusive remedy to attack the judgment. *Middleton v. Murff*, 689 S.W.2d 212 (Tex.1985).

*Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985).

■ A suit to enjoin the enforcement of the judgment of a court other than the one in which the action is brought is generally regarded as a impermissible collateral attack on that judgment. *Scott v. Graham*, 156 Tex. 97, 292 S.W.2d 324, 327 (1956); *Martin v. Stein*, 649 S.W.2d 342, 345 (Tex.App.— Fort Worth 1983, writ ref'd n.r.e.); *see also Butron v. Cantu*, 960 S.W.2d 91, 94 (Tex. App.—Corpus Christi, 1997, n.w.h.); TEX. CIV. PRAC. & REM.CODE ANN. § 65.023(b) (Vernon 1997). Moreover, the prohibition against

collateral attack extends to claims that false swearing or fraud of a party to the judgment renders it voidable. *See Glenn v. Dallas County Bois D'Arc Island Levee District,* 114 Tex. 325, 268 S.W. 452 (Com.App.1925); *Kaphan v. Fidelity & Deposit Co. of Maryland,* 564 S.W.2d 459, 462 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

■ Accordingly, even if the present judgment had been procured through conspiracy or perjured testimony, Cantu's only remedy is by a direct attack in the same court which rendered the judgment, and not by a collateral attack on the execution of that judgment in another court of equal jurisdiction. *See Hollis v. Hollis,* 226 S.W.2d 129, 133 (Tex. Civ.App.-Amarillo 1949, writ dism'd w.o.j.).[2]

As this Court recently stated in our opinion dissolving the temporary injunction of the 93rd District Court in the underlying wrongful garnishment action, "orderly procedure and proper respect for the courts will require that ... attacks upon their judgments should be made in the court rendering such judgment, rather than in other courts indiscriminately." *Butron,* at 94 (quoting *McVeigh v. Lerner,* 849 S.W.2d 911, 914 (Tex.App.—Houston [1st Dist.] 1993, writ denied)).

## IV. This Court's Order Granting the Injunction Against Cantu.

■ By its original opinion on September 26, 1997, and a corrected opinion on October 2, 1997[3], this Court issued an anti-suit injunction against Cantu enjoining him "from filing any additional lawsuit or asking for additional relief within any pending action, whether in law or equity, that would impede or prevent the collection of the final judgment rendered by the 138th District Court."

■ An anti-suit injunction is appropriate in four instances: 1) to address a threat to the court's jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity of suits; or 4) to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996). In the present case, we concluded that Cantu's attempts to block enforcement of the judgment both threatened this Court's jurisdiction over that judgment and had become vexatious and harassing to the parties seeking to enforce the judgment.

Moreover, this Court's injunction against asking for relief that would impede or prevent the collection of that judgment was sufficiently specific to inform Cantu what action was required of him.

The Texas Supreme Court has set out the following balancing test to determine whether an injunction is sufficiently specific to be enforced:

> For a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him. *Ex Parte Slavin,* 412 S.W.2d 43 (Tex.1967). Interpretation of the provisions of the court order in question should not rest upon implication or conjecture. The allegedly contemptuous acts must be directly contrary to the express terms of the court order. *Ex Parte Hodges,* 625 S.W.2d 304 (Tex.1981). On the other hand, a court order need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." *Ex Parte McManus,* 589 S.W.2d 790, 793 (Tex.Civ.App.—Dallas 1979, no writ). These general rules of law require us to balance the due process rights of individuals accused of contempt with the power of courts to enforce their orders.

---

**2.** If a party disagrees with a trial court's ruling, there are other methods by which that party may obtain review in the same case that rendered the judgment. In the case at hand, without regard to the merits of such actions, Cantu could have, and did, challenge the judgment of the 138th District Court directly by filing a motion for new trial, appeal, writ of error, and bill of review.

**3.** The corrected opinion made only the minor deletion of the word "temporary" to indicate that the nature of this Court's injunction was permanent.

*Ex parte Blasingame,* 748 S.W.2d 444, 446 (Tex.1988); *see also Ex parte Kraus,* 863 S.W.2d 104, 106 (Tex.App.—Corpus Christi 1993, orig. proceeding).

In *Kraus,* for instance, this Court held an injunction in a child custody case that ordered a party to "conduct all acts necessary to secure possession of the child" and "assist with the immediate return of the child to the Court" to be too vague and ambiguous to be enforced. *Id.* at 107. However, the circumstances of the particular case must be taken into consideration in determining whether the order is too vague to be enforced. The Texas Supreme Court in *Ex parte Hudson,* 917 S.W.2d 24 (1996), concluded that an injunction against a landowner requiring him to take certain specific actions to clean and maintain his property, in addition to a general clause requiring him to "maintain [the land] in a sightly condition" was sufficiently specific to apprise the landowner of the actions required of him. *Id.* at 26.

In the present case, this Court's injunction ordered Cantu not to file a lawsuit or ask for relief that would impede or prevent the collection of the final judgment of the 138th District Court. The final judgment of the 138th District Court represents a certain sum of money owed now by Cantu to Butron, the payment of which has been secured by a supersedeas bond, which is itself secured by letters of credit. Cantu must reasonably be aware that actions which interfere with the collection process itself, or with the security, violate the present injunction. Under the test set out in *Blasingame,* we conclude that the present injunction is sufficiently specific to prevent Cantu from continuing his efforts to block the execution of that judgment.

## V. Contempt Hearing and Findings by this Court.

■ On October 24, 1997, this Court had a "show cause" hearing at which Butron and Cantu appeared individually, and through counsel.[4] This Court received sworn testimony and exhibits offered by the parties. This Court finds that Mark A. Cantu has continued to file numerous pleadings before the courts of Hidalgo County in an attempt to prevent Butron from satisfying the judgment rendered against Cantu by the 138th District Court. Cantu's underlying theory in all of the actions filed by him is that the judgment against him was a product of conspiracy and perjured testimony, and he maintains his belief that any other trial court in Texas is properly able to declare that judgment void on such grounds.

Subsequent to the issuance of this Court's September 26, 1997, injunction, Cantu has filed pleadings in two separate trial courts in Hidalgo County asking for relief which would prevent or impede collection of the judgment against him. Specifically, this Court finds, based on the evidence offered at the October 24th hearing, that Cantu filed the following actions:

On October 1, 1997, Mark A. Cantu filed in the 370th District Court his "Plaintiff's Response to Defendant's Amended Emergency Motion to Dissolve Temporary Restraining Order." By this pleading, Cantu alleged that the 93rd District Court had declared void the judgment against him. Accordingly, Cantu asked the 370th District Court to enjoin the surety on the bond, Universal Surety of America, Inc., from making demand for and receiving funds under letters of credit securing the supersedeas bond posted in connection with the appeal of the judgment rendered against Cantu by the 138th District Court.

On October 6, 1997, Mark A. Cantu filed in the 139th District Court his "Application for Temporary Restraining Order and Injunctive Relief." By this pleading, Cantu alleged that Robert W. Johnson, counsel for Butron, stipulated that he would not seek to enforce the judgment of the 138th District Court if the supersedeas bond were increased pending appeal of the bill of review proceeding concerning that judgment. Accordingly, Cantu

---

4. As constructive contempt of this Court's order committed outside the presence of the Court, Cantu's alleged violations must be tried at an evidentiary hearing before this Court or a trial court designated by this Court to hear the matter.

*See Ex parte Durham,* 921 S.W.2d 482, 485–86 (Tex.App.—Corpus Christi 1996, orig. proceeding); *In re Reed,* 901 S.W.2d 604, 610–11 (Tex. App.—San Antonio 1995, orig. proceeding).

asked the 139th District Court for a temporary restraining order to enjoin the surety on the bond, Universal Surety of America, Inc., from making demand for and receiving funds under letters of credit and to enjoin Johnson from continuing to pursue collection of the judgment against Cantu.

Specifically, the Court finds that Mark A. Cantu violated its September 26, 1997, order by the following actions, as were alleged in the present motion to hold Mr. Cantu in contempt:

(b) filing on October 1, 1997, in the 370th District Court of Hidalgo County, Texas, sworn pleadings, to wit, Plaintiff's Response to Defendant's Amended Emergency Motion to Dissolve Temporary Restraining Order, asking that court to enjoin Universal Surety of America, inc., from making demand for and receiving funds under letters of credit issued to secure the supersedeas bond posted in the cause of action in the 138th District Court of Cameron County, Texas, in which Relators recovered the underlying judgment against the Cantus, in violation of this Court's order enjoining the Cantus from asking for additional relief that would impede or prevent the collection of the final judgment rendered by the 138th District Court.

(c) filing on October 6, 1997, in the 139th District Court of Hidalgo County, Texas, sworn pleadings, to wit, Application for Temporary Restraining Order and Injunctive Relief, asking that court to enjoin Universal Surety of America, inc., from making demand for and receiving funds under letters of credit and to enjoin Relator's attorney, Robert W. Johnson, from continuing to pursue collection of their judgment against the Cantus, in violation of this Court's order enjoining the Cantus from asking for additional relief that would impede or prevent the collection of the final judgment rendered by the 138th District Court.

## VI. Judgment of Contempt.

▇▇▇ After considering all of the evidence before the Court, we find and conclude that both of these pleadings before the 370th and 139th District Courts are in violation of this Court's injunction and that Mark A. Cantu is guilty of contempt on each allegation (b and c) as set out above.

## VII. Punishment.

▇▇▇ There are two types of punishment for contempt of court: civil, or coercive contempt, and criminal contempt, sometimes called punitive contempt. *See Ex parte Hawkins,* 885 S.W.2d 586, 588 (Tex.App.-El Paso 1994, orig. proceeding); *Ex parte Mitchell,* 783 S.W.2d 703, 706 (Tex.App.—El Paso 1989, orig. proceeding). The statutory authority for punitive contempt allows punishments of a fine of not more than $500 and confinement in jail for not more than six months for each violation. *See* TEX. GOV'T CODE ANN. § 21.002(b) (Vernon 1988). For civil contempt, however, the Court has the authority to assess coercive confinement until such time as the contemnor complies with the order of the Court. Civil contempt is intended to persuade or coerce the contemnor to obey an order of the court. *Ex parte Hawkins,* 885 S.W.2d at 588; *Ex parte Mitchell,* 783 S.W.2d at 706. The confinement is conditional upon obedience and therefore the civil contemnor "carries the keys of [his] prison in [his] own pocket." *Ex parte Mitchell,* 783 S.W.2d at 706 (citing *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Ex parte Werblud,* 536 S.W.2d at 545.).

▇▇▇ Having concluded that respondent is in contempt of this Court's injunctive orders, we now face the difficult task of assessing appropriate punishment for such actions.

At the outset, we are mindful that those of us who have chosen careers in the legal profession and have been given the special privileges attendant thereto, have also assumed special obligations and duties to the profession, the courts and the judicial system. Each of us is an officer of the court in which we practice. It is axiomatic that the courts are the glue which holds our society together. If society does not have confidence in the fairness and impartiality of the court and its officers, then the very foundations of society are threatened. At the present time, when cynicism and skepticism of

the integrity of the judicial system is expressed by much of society, we must look honestly at ourselves to ensure that the system is rightly entitled to the respect and honor to which we all aspire. In order to have the credibility to which the system is entitled, disrespect and violation of court orders by an officer of the court must not be tolerated.

Throughout the lengthy proceeding relating to the underlying issues in this case, relator has shown that the monetary fines allowed by our statutes would be scant punishment in his situation; therefore, it seems that the primary means by which we can demonstrate our determination not to tolerate the violation of our orders is by the restriction of respondent's liberty by confinement in jail.

We therefore assess punitive contempt of thirty (30) days in the Hidalgo County Jail and a fine of $500.00 separately for each of the two violations found, confinement to run concurrently.

Accordingly, the Court hereby ORDERS, ADJUDGES, and DECREES that Mark A. Cantu is in Contempt of Court for violating this Court's order of September 26, 1997, in the manner alleged in paragraph (b) as follows:

(b) filing on October 1, 1997, in the 370th District Court of Hidalgo County, Texas, sworn pleadings, to wit, Plaintiff's Response to Defendant's Amended Emergency Motion to Dissolve Temporary Restraining Order, asking that court to enjoin Universal Surety of America, inc., from making demand for and receiving funds under letters of credit issued to secure the supersedeas bond posted in the cause of action in the 138th District Court of Cameron County, Texas, in which Relators recovered the underlying judgment against the Cantus, in violation of this Court's order enjoining the Cantus from asking for additional relief that would impede or prevent the collection of the final judgment rendered by the 138th District Court.

For this violation, the Court orders that Mark A. Cantu shall be confined to the Hidalgo County Jail for thirty (30) days and fined $500.00.

The Court further ORDERS, ADJUDGES, and DECREES that Mark A. Cantu is in Contempt of Court for violating this Court's order of September 26, 1997, in the manner alleged in paragraph (c) as follows:

(c) filing on October 6, 1997, in the 139th District Court of Hidalgo County, Texas, sworn pleadings, to wit, Application for Temporary Restraining Order and Injunctive Relief, asking that court to enjoin Universal Surety of America, inc., from making demand for and receiving funds under letters of credit and to enjoin Relator's attorney, Robert W. Johnson, from continuing to pursue collection of their judgment against the Cantus, in violation of this Court's order enjoining the Cantus from asking for additional relief that would impede or prevent the collection of the final judgment rendered by the 138th District Court.

For this violation, the Court orders that Mark A. Cantu shall be confined to the Hidalgo County Jail for thirty (30) days and fined $500.00.

The Court orders that, for each of the two violations found by the Court, confinement shall run concurrently.

We further hereby order Mark A. Cantu to report to the Hidalgo County Jail no later than 5:00 p.m. on November 17, 1997, to begin confinement under the terms of this contempt order. In the event that Mark A. Cantu challenges the present order of contempt by application for writ of habeas corpus in the Supreme Court of Texas, we order him released from confinement on his own recognizance pending action by the Supreme Court of Texas on the writ of habeas corpus.

It is further ordered that all costs be adjudged against Mark A. Cantu.

FEDERICO G. HINOJOSA, J., not participating.

YANEZ, concurring and dissenting with opinion.

CHAVEZ, J., concurring and dissenting with opinion joined by YANEZ, J.

YANEZ, Justice, concurring and dissenting.

I join Justice Chavez in his concurring and dissenting opinion, but I would also dissent from the majority opinion for the reasons stated below:

Mark A. Cantu has filed several actions in Cameron and Hidalgo counties, as well as appeals to this Court, in a continuing effort to have set aside the underlying judgment rendered against him, in favor of Juan Lopez Butron and Luis Enrique Cortinas Villareal (collectively as "Butron"), and also to prevent the collection of the judgment, and preserve the monies in the registry of the district court, while he pursues his legal remedies against said judgment. Cantu has asserted in each instance that the underlying judgment, rendered in the 138th District Court in Cameron County, Texas, was the result of a wrongful conspiracy, fraud, and was based in whole or in part on perjured testimony.

Among the actions filed by Cantu was an equitable bill of review in the 138th District Court, wherein Cantu sought to set aside the judgment altogether. Summary judgment was rendered against Cantu, in favor of Butron, in that action. An appeal of that summary judgment is presently before this court, and as of this date has not been ruled upon. Without expressing an opinion as to the merits of Cantu's claim in that appeal, it is clear to this judge that the matter could be remanded to the trial court, and, quite possibly, ultimately result in the vacation of the underlying judgment. Cantu contends that he is entitled to enjoin collection of the underlying judgment until he has exhausted the legal remedies available to challenge that judgment.

Notwithstanding Cantu's position, on September 26, 1997, a panel of this Court of which I was not a part issued an order "enjoining respondent Mark A. Cantu and Roxanne Cantu, their agents, attorneys or anyone acting on their behalf, from filing any additional lawsuit or asking for any additional relief in any pending action, whether in law or in equity, that would impede or prevent the collection of the final judgment rendered by the 138th District Court."

I have serious reservations about categorically enjoining a party from exercising any and all legal avenues for attacking a judgment and protecting his or her rights, when the exercise of such avenues are provided for by law. Without considering the merits of Cantu's bill of review petition currently pending in this Court, I am reluctant to hold Mark Cantu in contempt for seeking to prevent allocation of assets while the rights thereto are still being challenged through legitimate means. Notwithstanding my concerns regarding the propriety of this Court's prior order, I am bound by it, and am now charged, along with my fellow justices, with the task of protecting its enforcement, and in so doing, protecting the jurisdiction of this Court. I agree with the majority that some of Mark Cantu's actions subsequent to this Court's order of September 26, 1997, were prohibited, and therefore, he should be held in contempt of Court. I disagree with the majority, however, to the extent that it finds Cantu's actions constitute vexatious and harassing litigation.

I join Justice Chavez in concluding that Cantu should not be confined for his conduct, and I would recommend that any sentence against Cantu be suspended.

FEDERICO G. HINOJOSA, J., not participating.

CHAVEZ, Justice, concurring and dissenting.

I concur with the majority's finding of contemptuous conduct, but I disagree with the punishment assessed, for the reasons set forth below.

The litigation underlying the instant contempt proceeding involves a long and bitter dispute arising out of a judgment obtained by Juan Lopez Butron and Luis Enrique Cortinas Villarreal (collectively "Butron"), against Mark A. Cantu in excess of $1,000,000 in May 1993. *See Butron v. Cantu,* 960 S.W.2d 91 (Tex.App.—Corpus Christi 1997, n.w.h.); *Cantu v. Butron,* 921 S.W.2d 344 (Tex.App.—Corpus Christi 1996, writ denied); *Cantu v. Butron,* 905 S.W.2d 718 (Tex.App.—Corpus Christi 1995, writ denied).

Immediately after Butron obtained the underlying judgment against Cantu, Butron sought to garnish Cantu's property in Hidalgo County, Texas.[1] Cantu responded by filing a lawsuit for wrongful garnishment in Hidalgo County. Subsequently, Cantu timely gave his notice of appeal from the May 1993 judgment and filed a supersedeas bond. We affirmed the May 1993 judgment, the Supreme Court of Texas denied writ of error, and our mandate issued on February 19, 1997. *Cantu*, 921 S.W.2d 344. The history of the litigation is more fully set out in the majority's opinion.

My attention is drawn to the proceedings below which occurred on March 10, 1997, following the issuance of the mandate, and I believe their significance has been thus far overlooked. In those proceedings, Cantu was attempting to enjoin Butron from executing upon the judgment. At that point, the accrual of post-judgment interest had caused the underlying judgment to swell beyond the amount of the supersedeas bond.

Significantly, Butron's counsel agreed to forebear execution, pending appellate resolution of the bill of review proceeding from the 138th District Court, provided that Cantu obtain an increased bond amount (in order to cover the growing judgment). Butron's counsel stated that "if I have a supersedeas bond in the full amount of the judgment, I will agree not to pursue the mandate, but as the court heard, we're $250,000 short on the supersedeas bond." Butron's counsel and Cantu's counsel then agreed upon the deadline for posting the increased bond amount. Butron's counsel stated: "Your Honor, if they agree to post the bond by noon on Wednesday, I will agree not to pursue execution."

The record reflects that Cantu has abided the terms of the foregoing agreement by obtaining the further issuance of irrevocable credits from International Bank of Commerce ("IBC"), in order to secure the super-

sedeas obligation of Universal Surety of America ("Universal"), which was increased in accordance with the accrual of post-judgment interest on the underlying judgment. Butron's judgment, therefore, remains fully secured.

Despite the foregoing agreement to forebear in execution of Butron's judgment, Universal demanded payment pursuant to the credits issued by IBC. IBC honored its letter of credit obligations, and wired the funds to Universal. Universal then instituted interpleader proceedings. Universal's presentment to, and demand for payment from, IBC, despite the agreement to forebear in execution, caused Cantu's subsequent attempts to protect himself through extraordinary writs.

Cantu, as IBC's letter of credit customer,[2] was not free to alter the terms of the irrevocable credits of which Universal was the beneficiary.[3] TEX. BUS. & COMM.CODE ANN. § 5.106(b) (Vernon 1994). IBC, as the letter of credit issuer,[4] was required to honor Universal's demand for payment. TEX. BUS. & COMM.CODE ANN. § 5.114(a) (Vernon 1994 & Supp.1997) (setting forth issuer's "duty and privilege" to honor the credit); *see also* TEX. BUS. & COMM.CODE ANN. § 5.115 (Vernon 1994) (regarding beneficiary's remedy for improper dishonor). IBC's liability to Universal upon Universal's demand for payment was independent of that of Cantu. *See* TEX. BUS. & COMM.CODE ANN. § 5.114, cmt. 1. (Vernon 1994 & Supp.1997). Further, the payment by IBC to Universal rendered Cantu immediately liable to IBC. TEX. BUS. & COMM. CODE ANN. § 5.114(c) (Vernon 1994 & Supp. 1997).

Cantu was thus unable to prevent the payment to Universal by IBC, despite the nonexecution agreement. Cantu, however, sought to prevent dissipation of the funds tendered to Universal. Because the judgment creditors are Mexican nationals, attachment was an available remedy for Cantu. *See* TEX. CIV. PRAC. & REM.CODE ANN.

---

1. Under the circumstances, it is apparent that Butron did not avail himself of post-judgment discovery techniques.

2. *See* TEX. BUS. & COMM.CODE ANN. § 5.103(a)(7) (Vernon 1994 & Supp.1997).

3. *See* TEX. BUS. & COMM.CODE ANN. § 5.103(a)(4) (Vernon 1994 & Supp.1997).

4. *See* TEX. BUS. & COMM.CODE ANN. § 5.103(a)(3) (Vernon 1994 & Supp.1997).

§ 61.002(1), (5) (Vernon 1997). Pre-judgment attachment may, pursuant to statute, issue to secure an unliquidated debt, or one allegedly arising from tortious conduct. TEX. CIV. PRAC. & REM.CODE ANN. §§ 61.004, 61.005 (Vernon 1997). Of course, Cantu would not have been in a position to pursue these remedies, had the non-execution agreement been honored.

The majority appears to place a higher degree of obligation on Cantu to obey the court's orders simply because he is an attorney. I would suggest that all persons, regardless of their occupations, are equally obligated to obey the orders of the court. We should treat each complaint alleging violation of the court's orders on a case-by-case basis and treat all contemnors equally, regardless of their station in life. While mindful of the public's perception of the judicial system, I am also mindful of our obligation to rule fairly and impartially on the merits of each case and not to merely appease the roar of the crowd.

In this case it appears that Butron drew first blood by seeking to garnish Cantu's bank accounts before the ink on the underlying judgment was dry. Later, after agreeing not to execute on the judgment if Cantu provided an adequate supersedeas bond, Butron nevertheless made demand on the surety for payment. Cantu's reaction was to seek the protection of the courts.

I agree, however, that Cantu was required to obey the September 26, 1997 order which enjoined him from taking any further action to impede the collection of the final judgment rendered by the 138th District Court of Cameron County, Texas, even if the order was improvidently granted. I also agree that Cantu violated the order by the actions he took subsequent to the order. I disagree, however, that Cantu should be confined for his conduct. Cantu had a right to rely on Butron's agreement not to execute pending determination of the bill of review, especially since the judgment was fully protected. In determining what punishment to assess, I would also evaluate the conduct of the complainant as well as the contemnor. In this case, it appears that Cantu merely reacted to Butron's provocations. In my opinion, these circumstances mitigate in favor of conditional suspension of the sentence imposed. For these reasons, I dissent from the punishment assessed by the majority.

YANEZ, J., joins in the concurring and dissenting opinion.

FEDERICO G. HINOJOSA, J., not participating.

## ORDER ON MOTION FOR REHEARING

 The Court has before it Mark A. Cantu's Emergency Motion for Stay of Commitment Order, for Reconsideration and Rehearing of Relator's Motion for Contempt, and Supplemental Response to Relator's Motion for Contempt. We have stayed the commitment order in order to consider the remainder of the motions.

The Court has been informed that the controversy between Juan Lopez Butron, Luis Enrique Cortinas Villarreal, their attorney, Robert W. Johnson, Jr. on the one hand, and Mark A. Cantu, on the other hand, has been compromised and settled. In view of the settlement, Cantu now requests that we rehear, reconsider and rescind our findings of contempt and set aside our judgment of contempt.

At the contempt hearing, the Court strongly urged all parties to make one last final attempt at settling this most contentious litigation. The Court welcomes the fact that the parties were able to accomplish this difficult task. The settlement, however, does not excuse Cantu's actions which led to our finding of contemptuous conduct on his part. The Court is still of the opinion that Cantu violated this Court's orders and is in contempt of court as set out in this Court's Judgment of Contempt dated November 12, 1997.

We are a government of laws rather than men. All persons have a legal duty to observe and obey all valid orders of the court. Our laws and rules provide for relief and remedies for those who might disagree with our orders, but until they are overturned by some higher authority, our orders remain in full force and effect and must be obeyed.

The conduct of anyone who seeks to disobey such orders must be considered on a case by case basis. Cantu's conduct has been previously explained in the majority and dissenting opinions of our judgment of contempt and it is not necessary that they be rehashed again.

It is therefore the Order of the Court that our order of confinement in the Hidalgo County Jail dated November 12, 1997 be, and it is hereby suspended under the following conditions of probation:

1. Mark A. Cantu is ORDERED to enroll in, attend, and complete on Friday, December 12, 1997, from 8:30 a.m. to 4:00 p.m., The Ethics Course, sponsored by the Texas Center for Legal Ethics and Professionalism, to be held in the Texas Law Center, Room 101–102, 1414 Colorado St., Austin, Texas 78711, and to supply this Court with a certificate from the Texas Center for Legal Ethics and Professionalism certifying that he has satisfactorily completed the above-referenced course.

2. Payment of the fines totaling $1,000.00 and Court costs within 10 days from the date of this Order.

If Mark A. Cantu completes the conditions set out above, the commitment to jail shall be set aside and held for naught; however, if Mark A. Cantu fails to comply with the terms of probation or either of them, we hereby ORDER him to report to the Hidalgo County jail no later than 5:00 p.m. on December 22, 1997, to begin confinement under the terms of this contempt order. In the event that Mark A. Cantu challenges the present order of contempt by application for writ of habeas corpus in the Supreme Court of Texas, we order him released from confinement on his own recognizance pending action by the Supreme Court of Texas on the writ of habeas corpus.

It is further ordered that all costs be adjudged against Mark A. Cantu.

## ORDER

On January 21, 1998, this Court heard the remaining motions for relief in connection with the present original proceedings, including the joint motion to dismiss these proceedings and Robert W. Johnson, Jr.'s objection to that motion and his own motion for rehearing and correction of our prior of November 20, 1997.

By that order, we reviewed a prior order holding Mark A. Cantu in contempt and provided additional terms by which Cantu might purge himself of contempt. As a part of our November 20th order we noted that "[t]he Court has been informed that the controversy between Juan Lopez Butron, Luis Enrique Cortinas Villarreal, their attorney, Robert W. Johnson, Jr. on the one hand, and Mark A. Cantu, on the other hand, has been compromised and settled."

Robert W. Johnson, Jr. has objected that he was not a party to the settlement or to the other parties' "Joint Motion to Dismiss." Johnson, attorney for Butron and Villarreal in the underlying proceeding against Cantu in the 138th District Court in Cameron County, had been sued individually by Cantu in the 93rd District Court of Hidalgo County in the wrongful garnishment action. Accordingly, Johnson contends that the underlying proceedings concerning which this Court granted mandamus relief and later held Cantu in contempt remain as to Johnson and have not been settled or dismissed. While we acknowledge that Johnson is still a party to the underlying litigation in the 93rd District Court, this does not change our November 20th order or convince us to alter the terms by which we allowed Cantu to purge himself of contempt.

By our prior order, we required Mark A. Cantu to complete "The Ethics Course," sponsored by the Texas Center for Legal Ethics and Professionalism ("the Texas Center") and to pay a $1,000 fine as a means of purging himself of our order finding him in contempt and committing him to jail. The Texas Center has informed us that Cantu completed the required course and we are satisfied that he has fulfilled the conditions for purging himself of contempt.

Accordingly, we set aside our prior order of November 12, 1997, committing Mark A. Cantu to jail for contempt of court.

All other relief requested by any party in connection with the present original proceedings is hereby denied. Therefore, no further orders will issue from this Court in the present proceedings.