v00154



 

 







 

NUMBER 13-03-484-CV 

COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG


__________________________________________________________

IN RE: RICHARD EDMUND SURGENT

__________________________________________________________

On Petition for Writ of Habeas Corpus

__________________________________________________________

O P I N I O N 


Before Chief Justice Valdez and Justices Rodriguez and Garza


Opinion Per Curiam


 

This original proceeding arises from a highly-disputed divorce proceeding. In
several orders, the trial court found relator, Richard Surgent, to be in contempt of court for
failure to pay spousal support and failure to disclose his assets. The court ordered his
incarceration. Relator contends he is being unlawfully incarcerated. We agree and grant
relator's petition for writ of habeas corpus. (1)

I. FACTUAL AND PROCEDURAL HISTORY

On April 15, 1998, Cynthia Surgent, relator's wife, filed for divorce. On May 20,
1998, the court signed an agreed temporary order, which required relator to pay temporary
spousal support in the amount of $4,500 per month and prepare a sworn inventory and
appraisement of all separate and community property, among other things.

On December 17, 1999, after a hearing on Cynthia's motion to enforce the
temporary order, the trial court issued an order finding relator missed seven payments of
temporary spousal support despite being financially able to make the payments. The court
found relator in contempt for each separate violation of the temporary order and placed
relator on community supervision for 180 days on various terms and conditions. Among
those terms and conditions was the requirement that relator pay a $5,000 cash bond and
appear in court on January 3, 2000 for a compliance hearing.

When relator failed to appear in court on January 3, the trial court revoked the cash
bond. On January 6, 2000, the court issued a writ of attachment and a capias for relator's
arrest. Relator was arrested in Wayne County, Michigan and delivered to the Matagorda
County jail on February 2, 2000. Relator filed an application for writ of habeas corpus in
the trial court on February 3, 2000, which was denied. 

The trial court held a hearing on February 7 and 8. During the hearing, the court
found relator had "ignor[ed] the Court's orders on disclosures." It conditioned relator's
release from imprisonment on compliance with discovery unless the parties reached a full
settlement and the divorce was made final. 

On February 15, 2000, relator filed a petition for writ of habeas corpus to this Court,
which we denied on February 22. See In re Surgent, No. 13-00-101-CV (Tex.
App.-Corpus Christi Feb. 22, 2000, orig. proceeding). 

On February 17, 2000, the trial court held another hearing on the application for writ
of habeas corpus. (2) The court issued an order dated February 21 in which it made
numerous findings, including that relator had made arrangements to flee the county and
jurisdiction of the court and that he obstructed justice by failing to submit an inventory of
his property in violation of the court's order. The court set bond in the amount of his
unpaid obligations to the court and his wife and conditioned his release on the following
terms:

[Relator] is ordered to comply fully to the satisfaction of this court with all
issued discovery in this case and with the court's order for a complete
inventory of all property including beneficial interests, trusts and interests
held in the hands of third parties domestic and off-shore to which [relator]
has made any contribution, in which he has held any office or interest, or
from which he has a right, vested or contingent, past, present or future to
receive any benefit.

Relator filed a petition for writ of habeas corpus to the Supreme Court of Texas. 
The Court denied the petition on February 28, 2000. See In re Surgent, No. 00-0176 (Tex.
Feb. 28. 2000, orig. proceeding).

On March 16, 2000, the parties entered into a mediated settlement agreement. On
satisfaction of various conditions, the parties would request the court to change relator's
cash bond to a personal recognizance bond. (3) 

On February 22, 2001, the trial court held a hearing on yet another motion for
contempt. (4) The court stated:

He's in jail. If I hold him in contempt again, what more can I do? 

. . . 

I think we are here because Dr. Surgent hasn't complied with the orders of
the Court. . . . [U]nless the Court can come up with a more coercive or a
different penalty other than jail for contempt, then I think we're just going to
have to wait it out a little while longer.

The court ultimately took the matter under advisement pending submission of additional
evidence. 

On November 6, 2001, the court found, among other things, relator had continuously
refused to comply with the court's order to provide an inventory of property and that,
despite having the ability to do so, relator had refused to comply with the requirements for
his release. The court concluded the "coercive" incarceration had been insufficient to
produce compliance. The court denied relator's motion for reduction of bond or release
from jail. The court ordered relator's compliance with discovery and imposed monetary
sanctions on relator. 

In his petition for writ of habeas corpus, relator challenges the jurisdiction of the trial
court over the entire divorce proceeding. Alternatively, relator raises nine issues
challenging the validity of the various orders of commitment. In those nine issues, relator
contends his continued incarceration from January 24, 2000 until the present is a violation
of his due process rights, the various orders resulting in his continued incarceration are
void, and he received ineffective assistance of counsel during his criminal contempt
proceedings. (5)

II. ANALYSIS

A. Habeas Corpus

The purpose of a writ of habeas corpus in civil matters is to command the release
of a person who is incarcerated "by virtue of an order, process, or commitment issued by
a court or judge because of the violation of an order, judgment, or decree previously made,
rendered, or entered by the court or judge in a civil case." Tex. Gov't Code Ann.
§ 22.221(d) (Vernon Supp. 2003). We review a petition for writ of habeas corpus to
determine whether the order of commitment was void, either because it was beyond the
power of the court or because the contemnor was not afforded due process of law. Ex
parte Barnett, 600 S.W.2d 252, 254 (Tex. 1980, orig. proceeding). Our purpose is not to
determine the guilt or innocence of the contemnor, but only to determine whether the
contemnor has been unlawfully imprisoned. Ex parte Gordon, 584 S.W.2d 686, 688 (Tex.
1979, orig. proceeding). If the commitment order is void, the confinement is unlawful and
contemnor is entitled to release. Id. 

B. Jurisdiction

We address first relator's challenge to the trial court's jurisdiction over the case. 
See Ex parte Waggoner, 61 S.W.3d 429, 431 (Tex. Crim. App. 2001); Tex. Ass'n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). Relator contends the trial court
lacked subject matter jurisdiction over the entire divorce action because, at the time his
wife filed for divorce, an automatic stay was in place pursuant to chapter 11, section 362
of the United States Code. See 11 U.S.C. § 362 (2003). According to relator, this stay
precluded the commencement or continuation of the divorce proceeding. On this basis,
relator urges this Court to dismiss the divorce action for lack of jurisdiction and find all
judgments of contempt void. 

Section 362(a)(1) states in pertinent part: 

(a) Except as provided in subsection (b) of this section, a petition filed under
section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all
entities, of-- 

 (1) the commencement or continuation, including the issuance or
employment of process, of a judicial, administrative, or other action or
proceeding against the debtor that was or could have been commenced
before the commencement of the case under this title, or to recover a claim
against the debtor that arose before the commencement of the case under
this title. 

11 U.S.C. § 362(a)(1). A claim is defined as:

(A) right to payment, whether or not such right is reduced to judgment,
liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
undisputed, legal, equitable, secured, or unsecured; or 

(B) right to an equitable remedy for breach of performance if such breach
gives rise to a right to payment, whether or not such right to an equitable
remedy is reduced to judgment, fixed, contingent, matured, unmatured,
disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (2003).

Various bankruptcy courts have stated that the automatic stay provision in section
362(a)(1) does not apply to divorce petitions. See, e.g., In re Rook, 102 B.R. 490, 492
(E.D. Va. 1989) ("matters which do not bear on a debtor's economic status, such as the
dissolution of the marital relationship, are not stayed by a bankruptcy court"), aff'd, 929
F.2d 694 (4th Cir. 1991); In re Schock, 37 B.R. 399, 400 (D. N.D. 1984) (holding court need
not modify a stay to allow divorce action to proceed in state court because automatic stay
provision of the bankruptcy code did not apply to divorce proceedings); In re Cunningham,
9 B.R. 70, 71 (D. N.M. 1981) (denying petition to grant divorce because bankruptcy court
had no jurisdiction over divorce proceedings and matter fell within province of state law). 
The courts reasoned that a divorce petition is not a "claim" as used in section 362(a)(1) and
defined in section 101(4). In re Cunningham, 9 B.R. at 71; In re Schock, 37 B.R. at 400
(relying on reasoning in In re Cunningham). The courts also relied on well-settled law that
the subject matter of domestic relations falls within the province of state law. In re
Cunningham, 9 B.R. at 71 (citing Barber v. Barber, 62 U.S. 582 (1859)); c.f. In re Universal
Profile, Inc., 6 B.R. 194, 196 (N.D. Ga. 1980) ("the whole subject matter of domestic
relations is a matter peculiarly within the province of state law"). However, the courts are
careful to note that, although a petition for divorce in a state court is not subject to the
automatic stay, a state court does not have the right to make a determination or disposition
of property that is part of the bankruptcy estate. In re Schock, 37 B.R. at 400; In re
Cunningham, 9 B.R. at 71. 

Here, the bankruptcy proceeding was initiated by or against relator in 1995. 
Although the bankruptcy case was pending at the time his wife filed for divorce, the
automatic stay did not serve as a complete bar to the divorce action in state court. The trial
court had jurisdiction to hear matters pertaining to the dissolution of the marriage, even
though it was constrained in matters relating to property that was part of the bankruptcy
estate. (6) Accordingly, we will not dismiss the divorce action or declare all of the trial court's
orders void for lack of subject matter jurisdiction. 

C. Government Code Section 21.002

As part of one of relator's remaining issues, relator contends the various
commitment orders are void because his current incarceration is illegal under section
21.002(b) of the government code. See Tex. Gov't Code Ann. § 21.002(b) (Vernon Supp.
2003). This section limits the punishment for criminal contempt to a fine of not more than
$500 or confinement in the county jail for not more than six months. Id. Because these
limitations are applicable only to criminal contempt, we first consider whether relator's
current confinement is the result of criminal contempt. 

Two types of contempt exist: criminal contempt and civil contempt. In re Cantu, 961
S.W.2d 482, 489 (Tex. App.-Corpus Christi 1997, orig. proceeding). The object of criminal
contempt is to punish the contemnor for an affront to the court. Ex parte Durham, 921
S.W.2d 482, 485 (Tex. App.-Corpus Christi 1996, orig. proceeding). The purpose of civil
contempt is to coerce the contemnor to comply with some order of the court. In re Cantu,
961 S.W.2d at 489. Under civil contempt, the court may assess coercive confinement until
such time as the contemnor complies with the court's order. Id. In this instance, the
contemnor "carries 'the keys of [his] prison in [his] own pocket.'" Ex parte Mitchell, 783
S.W.2d 703, 706 (Tex. App.-El Paso 1994, orig. proceeding) (quoting Shillitani v. United
States, 384 U.S. 364, 368 (1966)). 

The December 17, 1999 order imposed a punitive sentence-community supervision
for 180 days. This sentence was imposed as a penalty for relator's failure to pay
temporary spousal support and was not coercive. When relator violated the terms of the
order by failing to appear in court as required by the condition of the community
supervision, he was incarcerated. Thus, his initial incarceration was the result of criminal
contempt.

However, his incarceration became the result of civil contempt in February 2000. 
After relator was initially incarcerated, the court held hearings regarding his continued
incarceration. During the February 8, 2000 hearing, the court found relator had purposely
attempted to conceal his assets and failed to comply with the order requiring him to provide
an inventory of his property. At that time, the court conditioned relator's release from jail
on his compliance with the discovery order. The court explicitly stated the incarceration
was intended to elicit relator's compliance with discovery orders. After a second hearing,
the trial court issued a written order, dated February 21, 2000, conditioning relator's
release on his compliance with the discovery order. The November 6, 2001 order noted
relator's continued failure to comply with the court's order and again stated relator's
incarceration was conditioned on compliance with the discovery order. Under these orders,
relator was able to purge the contempt and secure his release by complying with the
court's order. Thus, these orders were coercive and show that his continued incarceration
was for civil contempt. 

Because his current incarceration is based on civil contempt, section 21.002(b) of
the government code does not apply. See Tex. Gov't Code Ann. § 21.002(b) (Vernon
Supp. 2003).

However, the legislature recently passed an act adding subsection (h) to section
21.002 of the government code. See Act of June 20, 2003, 78th Leg. R.S., § 1, 2003 Tex.
Gen. Laws 425. Section one of the act, which contains the language of the new
subsection (h), states in pertinent part:

(h) Notwithstanding any other law, a person may not be confined for
contempt of court longer than:

. . .

(2) the lesser of 18 months or the period from the date of confinement to the
date the person complies with the court order that was the basis of the
finding of contempt, if the confinement is for civil contempt. 

Id. Section two of the act renders the amendments to 21.002 applicable to a person found
in contempt of court before the effective date of the act and states that a period of
confinement for contempt that occurs before the effective date of the act counts toward the
maximum period of confinement detailed in the new subsection (h). Id. § 2. The act
became effective on June 20, 2003. See id. § 3.

The court's oral order of February 8, 2000 and subsequent written orders dated
February 21, 2000 and November 6, 2001 provided for the potentially unlimited
incarceration of relator. The effect of these orders was to authorize the coercive
incarceration of relator for approximately forty-four months based on his failure to comply
with the discovery order. These orders resulted in an incarceration in excess of the limits
set by the new subsection (h) and are, thus, void. Accordingly, relator is entitled to release
from incarceration.

Because we find relator's current incarceration is illegal under the new subsection
(h), we do not address relator's remaining contentions. See Tex. R. App. P. 47.1. 

III. CONCLUSION

We grant relator's petition for writ of habeas corpus and order relator's release. 
Consistent with our decision, we dismiss as moot relator's pending motion to grant his
petition or grant interim relief and deny real party's pending objections and motion to strike. 
 

 PER CURIAM



 


Order delivered and filed 

this 6th day of November, 2003. 
1. As required by Texas Rule of Appellate Procedure 52.8(b)(1), we requested a response from the real
party, Cynthia Surgent, on August 20, 2003. Although the real party filed various motions, she did not file a
response to the petition for writ of habeas corpus.
2. Relator did not provide a transcript of the hearing. The information about the hearing is in the
February 21, 2000 order.
3. Nothing in the court documents and transcripts provided by relator shows the agreement was ever
approved by the court.
4. The orders provided by relator in his appendix do not show any activity directly relating to relator's
incarceration from March 2000 until February 2001, with the exception of orders dated May 16 and 17, 2000. 
In those orders, the court increased relator's level of confinement and restricted his contact with others after
finding relator had transferred community property while incarcerated. These orders, however, did not change
relator's condition of confinement. 
5. Relator also contends in his petition the trial court should have enforced the mediated settlement
agreement and ordered his release. In a motion filed after the petition, relator states he is attempting to
revoke his consent to the agreement and, consistent with that position, has withdrawn this issue. Relator now
asks this Court to declare the agreement null and void. In addition, he asks this Court to review his counsel's
performance over the course of the entire divorce proceedings, monetary sanctions imposed by the court, and
various other matters not directly related to his current incarceration. Because our only purpose on review
of a petition for writ of habeas corpus is to determine whether the contemnor is lawfully incarcerated, we
decline consideration of these matters. See Ex parte Gordon, 584 S.W.2d 686, 688 (Tex. 1979, orig.
proceeding). 
6. We note relator was discharged from bankruptcy in November 1998. The automatic stay was lifted
at that time. See 11 U.S.C. § 362(c) (2003).